NICOLE M., a minor, by and through her guardian ad litem, JACQUELINE M., Plaintiff,

v.

MARTINEZ UNIFIED SCHOOL DISTRICT, Patricia S. Crocker, in her official capacity as Superintendent of Martinez Unified School District, and Darlene Guzman, individually and in her official capacity as Principal of Martinez Junior High School, Defendants.

No. C–93–4531 MHP.

United States District Court, N.D. California.

April 15, 1997.

Pamela Y. Price, Pamela Y. Price Law Offices, Oakland, CA, Karen T. Wolff, Lucas Law Firm, San Francisco, CA, for Plaintiffs.

Thomas G. Beatty, McNamara Houston Dodge McClure & Ney, Walnut Creek, CA, for Defendants.

## OPINION

PATEL, District Judge.

Plaintiff Nicole M., by and through her guardian ad litem, Jacqueline M., filed this action on December 22, 1993. On September 13, 1995, plaintiff filed her first amended complaint, alleging that (1) defendant Martinez Unified School District ("MUSD") intentionally discriminated against plaintiff in education on the basis of plaintiff's sex in violation of 20 U.S.C. section 1681 ("Title IX"); (2) defendant Darlene Guzman intentionally deprived plaintiff of her civil rights on the basis of plaintiff's sex in violation of 42 U.S.C. section 1983; (3) defendants MUSD, Guzman, and Patricia Crocker denied plaintiff her civil rights, particularly her right to be free from discrimination based on sex in a business establishment, in violation of Cali-

fornia Civil Code sections 51, 51.5, and 52(a); (4) MUSD and Crocker negligently retained, trained, supervised, and disciplined Guzman and other personnel; (5) MUSD, Guzman, and Crocker negligently inflicted emotional distress on plaintiff; and (6) MUSD and Crocker violated California Education Code sections 200, 212.5, 212.6, 220, and 230, which prohibit sexual harassment in educational institutions.

Now before the court is defendants' motion to dismiss plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Having considered the parties' arguments and submissions, and for the reasons set forth below, the court grants the defendants' motion in part and denies the defendants' motion in part.

## BACKGROUND [1]

Plaintiff attended Martinez Junior High School ("MJHS"), part of the MUSD, from approximately September 1991 to February 1993. MUSD receives federal financial assistance for its public education programs. Crocker is, and at all times relevant herein, was employed as the Superintendent of MUSD. Guzman was at all times relevant herein employed as the Principal of MJHS.

Plaintiff alleges that beginning in 1991 and continuing through the beginning of 1993, when she transferred out of MJHS, male students at the school repeatedly sexually harassed her. The harassment consisted of unwanted verbal comments regarding plaintiff's breasts and figure in general, and on one occasion involved a male student touching plaintiff's breast during class.

On January 4, 1993, plaintiff's mother, Jacqueline M., told Guzman that Nicole M. was being sexually harassed at school. On January 11, 1993, Jacqueline M. gave Guzman the names of the boys who had harassed Nicole M., as well as the names of other female students who witnessed the harassment. Sometime later, Guzman also learned that Nicole M. had been sexually assaulted in one of her classes. Guzman suspended for one day the boy who had sexually assaulted Nicole M.

Guzman took some additional action in response to the reported sexual harassment, but plaintiff alleges that these measures were inadequate and, at times, counter-productive. For example, sometime in January 1993, Guzman spoke with a group of girls, including Nicole M., so that the girls could tell her about any harassment and identify the harassers. However, although Guzman said that she would keep this meeting confidential, she later broke that promise and others at MJHS, including the harassers, discovered that Nicole M. had reported the harassment.

In late January 1993, Guzman moved Nicole M. into new classes so that she could avoid the worst harassers. Subsequently, the worst harasser was placed into one of Nicole M.'s new classes. Nicole M.'s complaints about this arrangement were unavailing. On February 3, 1993, Jacqueline M. informed Guzman that at least one boy continued to sexually harass Nicole M. On February 4, 1993, Jacqueline M. told Crocker about the sexual harassment that was occurring.

Because she no longer felt safe at MJHS, Nicole M. transferred from MJHS to a school in another district on February 17, 1993. On December 22, 1993, plaintiff filed this action.

## LEGAL STANDARD

A motion to dismiss will be denied unless it appears that the plaintiff can prove no set of facts that would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Fidelity Fin. Corp. v. Federal Home Loan Bank*, 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

## DISCUSSION

I. *Title IX Claim Against MUSD*

Title IX provides, in relevant part, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected

---

1. Unless otherwise noted, the following facts are taken from the first amended complaint.

to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Plaintiff seeks to maintain, under Title IX, an action for damages against MUSD for failing to adequately respond to student-to-student hostile environment sexual harassment.

At the time of filing their papers both plaintiff and defendants acknowledged that there was recent case law from this District holding that under Title IX a plaintiff may state a student-to-student hostile environment sexual harassment claim for damages against a school district if, and only if, the plaintiff alleges that the school district intentionally discriminated against the plaintiff because of the plaintiff's sex. *See Doe By and Through Doe v. Petaluma City Sch. Dist.,* 830 F.Supp. 1560 (N.D.Cal.1993) (*"Petaluma I "*). Both parties urged this court, for different reasons, not to adopt the *Petaluma I* holding. However, since that time the decision in *Petaluma I* has been reconsidered and its holding revised. *Doe By and Through Doe v. Petaluma City Sch. Dist.,* 949 F.Supp. 1415 (N.D.Cal.1996) (*"Petaluma III "*).[2] The court will take up the arguments of the parties in light of *Petaluma I* and *Petaluma III.*

Nicole M. encourages the court to hold that plaintiffs need not plead or prove that a school district intentionally discriminated on the basis of sex in order to recover damages against the school district for a Title IX student-to-student hostile environment sexual harassment claim. Nicole M. contends that instead, a plaintiff should be able to recover money damages against a school district if the school district knew or should have known of the student-to-student sexual harassment and failed to take reasonable steps to stop it.

In contrast, defendants suggest that school districts should *never* be liable for failing to intervene when one student sexually harasses another. Defendants reason that it is

difficult for school personnel to detect when adolescent behavior rises to the level of sexual harassment. Additionally, defendants maintain that it is not appropriate public policy to mandate that school districts be insurers of adolescent behavior and that a finding of school district liability will unleash a flood of lawsuits.

Neither the Supreme Court nor the Ninth Circuit has directly discussed the existence or nature of a cause of action against school districts under Title IX for student-to-student sexual harassment. In *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208. (1992), the Supreme Court held that a plaintiff could recover damages under Title IX against a school district for teacher-to-student sexual harassment. *Id.* at 74–75, 112 S.Ct. at 1037–38.. In *Franklin,* the plaintiff alleged that a teacher had sexually harassed her and that the district knew of the harassment but took no steps to stop it. *Id.* at 63–64, 112 S.Ct. at 1031–32. The plaintiff sought to recover money damages from the school district. *Id.* Defendant argued that Congress enacted Title IX under its Spending Clause powers, and as a result, plaintiff could recover no money damages even if she could establish that the defendant school district intentionally discriminated against her. The Court addressed the nature of remedies available under Spending Clause legislation,[3] citing to a portion of *Pennhurst State Sch. and Hosp. v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), in which the *Pennhurst* Court explained that

> [u]nlike legislation enacted under § 5 [of the 14th Amendment] ... legislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'con-

**2.** A prior ruling by the district court on the issue of qualified immunity was appealed and reversed by the Ninth Circuit in *Doe v. Petaluma City Sch. Dist.,* 54 F.3d 1447 (9th Cir.1995) ("Petaluma II").

**3.** However, the *Franklin* Court specifically declined to decide whether Congress enacted Title IX solely under its Spending Clause powers or if Title IX "also rests on powers derived from § 5 of the Fourteenth Amendment." *Franklin,* 503 U.S. at 75 n. 8, 112 S.Ct. at 1038 n. 8.

tract.' There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it.

*Pennhurst,* 451 U.S. at 17, 101 S.Ct. at 1540 (citations omitted).

The *Franklin* Court applied this reasoning to defendant's position that plaintiff could not recover damages against a school district even when the school district "intentionally" discriminates and concluded that defendant's contention was erroneous. The *Franklin* Court interpreted *Pennhurst* as prohibiting damage awards under Spending Clause legislation only when the alleged violation was "unintentional." *Franklin,* 503 U.S. at 74–75, 112 S.Ct. at 1037–38. Relying on *Pennhurst*'s interpretation of the contractual nature of Spending Clause legislation, the *Franklin* Court explained that the "point of not permitting monetary damages for an unintentional violation is that the receiving entity of federal funds lacks notice that it will be liable for a monetary award." *Id.* at 74, 112 S.Ct. at 1037. The *Franklin* Court further reasoned that "[t]his notice problem does not arise in a case such as this, in which intentional discrimination is alleged." *Id.*

Looking to *Franklin* for guidance, the *Petaluma I* court addressed the question of whether student-to-student sexual harassment is actionable under Title IX. The *Petaluma I* court decided that student-to-student hostile environment sexual harassment claims may be brought against school districts under Title IX; however, the court ruled that to obtain damages, as opposed to declaratory or injunctive relief, "the plaintiff must prove intentional discrimination on the part of an employee of the educational institution, not just that an employee or employees of the institution knew or should have known of the hostile environment and failed to take appropriate action to end it." *Petaluma I,* 830 F.Supp. at 1562; *accord Oona R.–S. v. Santa Rosa City Sch.,* 890 F.Supp. 1452, 1466 (N.D.Cal.1995) ("The Court finds that the reasoning of *Franklin* and *Petaluma I* persuasively establishes that intentional discrimination is an element of a Title IX claim against an institutional defendant.").

Subsequently, the court reconsidered the decision in *Petaluma I,* which held that the "knew or should have known" standard does not constitute intentional discrimination for the purposes of Title IX, and issued its new decision in *Petaluma III.* In *Petaluma III* the court returned to *Franklin* for guidance and ultimately reached a different conclusion. However, since *Franklin* did not deal with student-to-student harassment or employee-to-employee harassment the Supreme Court did not reach the issues of liability and the applicable standard in such cases. Neither were these issues addressed in *Guardians Ass'n v. Civil Serv. Comm'n.,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), a case discussed at length in *Franklin.* Thus, this court, like the court in *Petaluma III,* must extrapolate from *Franklin.*

*Guardians* involved interpretation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VI"). Title VI, like Title IX, is a Spending Clause statute. The two statutes were compared in *Guardians* and again in *Franklin.* In *Guardians* a splintered court took up the issues of whether there was a private cause of action under Title VI, the relief available, and whether a showing of intentional discrimination was required in order to obtain relief. However, the question of intentional discrimination arose in the discussion of disparate impact and disparate treatment theories, the former not requiring a showing of intent and the latter requiring intent. Piecing together the *Guardians* opinion and its concurrences, it is clear that a "majority of the Court agreed that retroactive relief is available to private plaintiffs for all discrimination, whether intentional or unintentional, that is actionable under Title VI." *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 630 n. 9, 104 S.Ct. 1248, 1252 n. 9, 79 L.Ed.2d 568 (1984) (discussing *Guardians* in the context of the anti-discrimination provisions of other federally-funded programs).[4] *Darrone* also held, rely-

4. Justice O'Connor, one of those making up the five-Justice plurality in *Guardians,* would have awarded retroactive and prospective relief, but only in cases of intentional discrimination. *Guardians,* 463 U.S. at 612, 103 S.Ct. at 3237–38 (O'Connor, J., concurring). She also declined to

ing on a different *Guardians* plurality, that a private plaintiff may recover back pay under Title VI where there is intentional discrimination. *Id.* at 630, 104 S.Ct. at 1252.

*Franklin* used the decision in *Guardians* to analyze liability and remedies under Title IX since both Title IX and Title VI are anti-discrimination laws adopted under Congress' Spending Clause powers. *Franklin*, however, did not involve issues of disparate impact but of sexual harassment. Indeed, it is difficult to see how most cases of sexual or racial harassment would be amenable to disparate impact analysis. Harassment claims do not challenge facially neutral standards that have a disparate impact on members of a protected class; they address intentional conduct. Thus, the *Franklin* Court turned to Title VII law to determine what standard should apply to Title IX sexual harassment claims.[5] The Court held:

> Unquestionably, Title IX placed on the [defendant school system] the duty not to discriminate on the basis of sex, and 'when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor "discriminate[s]" on the basis of sex.' *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). We believe the same rule should apply when a teacher sexually harasses a student."

*Franklin,* 503 U.S. at 75, 112 S.Ct. at 1037. This court finds *Franklin*'s citation to *Meritor* significant.

In *Meritor*, the Court analyzed a Title VII claim by an employee who alleged that a supervisor had sexually harassed her. The Court held that "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor,* 477 U.S. at 66, 106 S.Ct. at 2405. The Court also explained that "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." *Id.* at 64, 106 S.Ct. at

2404. In *Franklin,* the Court extended the rule to sexual harassment of a student by a teacher. 503 U.S. at 75, 112 S.Ct. at 1037–38.

Courts have also applied *Meritor*'s reasoning to hold that when one co-worker sexually harasses another co-worker because of the co-worker's sex, the harassing co-worker discriminates on the basis of sex. *See, e.g., Ellison v. Brady,* 924 F.2d 872 (9th Cir. 1991). Analogizing the Court's reasoning in *Franklin*—that the rule regarding supervisor-to-subordinate discrimination should apply equally to teacher-to-student harassment—this court finds in the instant action that the same rule should apply to student-to-student sexual harassment as applies to employee-to-employee sexually harassment; that is, when one student sexually harasses another student because of the student's sex, that student discriminates on the basis of sex. Defendants appear not to dispute such a conclusion; rather, they argue that even if students sexually harassed Nicole M. and this harassment constituted sex discrimination, Nicole M. may not recover damages against MUSD for such discrimination. Under a fair reading of *Franklin,* however, this position is untenable.

The *Franklin* Court ruled that a plaintiff may recover damages against a school district when teacher-to-student sexual harassment occurs. Unfortunately, the *Franklin* Court did not explicitly state the theory under which a school district could be held liable for a teacher's actions. However, it is implicit in *Franklin*'s reference to *Meritor,* that the Court relied on the agency principles developed in *Meritor* to determine a school district's liability for damages and to find that a teacher is an agent of the district. *Meritor* concluded that employers are not "always automatically liable for sexual harassment by their supervisors". *Id.* at 72, 106 S.Ct. at 2408. Nor does absence of notice to the employer "necessarily insulate that employer from liability." *Id.* The *Mer-*

reach the issue of whether a private plaintiff could recover monetary damages.

**5.** Title VII provides, in part, "It shall be an unlawful employment practice for an employer ... to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

*itor* Court said that it is necessary to look to agency principles such as those developed under Title VII and common law, to the extent that it is not inconsistent with Title VII. This requires looking at the job functions of the supervisor or agent and the circumstances of the particular employment relationship. *Id.* at 71–72, 106 S.Ct. at 2407–08. Title VII case law also holds that an employer is liable for damages when it knew or should have known that one co-worker was sexually harassing another and the employer fails to take steps reasonably calculated to end the harassment. *See Ellison,* 924 F.2d at 881–82.

Few circuits have addressed the standards to be used in determining whether a school is liable for peer harassment and the remedies that may be provided. The Ninth Circuit has not yet spoken on these issues. In *Davis v. Monroe County Bd. of Educ.,* 74 F.3d 1186, 1193 (11th Cir.), *vacated, pending reh'g en banc,* 91 F.3d 1418 (11th Cir.1996), the Eleventh Circuit, following Title VII case law, held that Title IX encompasses a claim for damages due to a sexually hostile education environment created by a fellow student or students when the supervising authorities knowingly fail to act to eliminate the harassment. The *Davis* court set forth five elements which a plaintiff must show in order to establish a claim for student-to-student sexual harassment: "(1) that she is a member of a protected group; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of her education and create an abusive educational environment; and (5) that some basis for institutional liability has been established." *Id.* at 1194 (citing *Meritor* and *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). The last element, *Davis* held, can be satisfied by showing that the district officials, such as teachers or principals, knew or should have known of the harassment and failed to take "prompt and remedial action to end the harassment". *Id.* at 1195. In *Davis* the student alleged that she had told the principal about the offending conduct and that several teachers also had knowledge of the

conduct, yet the school failed to take prompt action to stop the harassment.

Although *Davis* has been vacated pending rehearing, its standard has been adopted and employed by other circuit and district courts in cases of both peer and teacher-to-student sexual harassment. The Tenth Circuit in *Seamons v. Snow,* 84 F.3d 1226, 1232–33 (10th Cir.1996), cited to *Davis* and approved much of its analysis in a case of peer harassment, but failed to reach the fourth and fifth elements because it found that the harassment was not based on sex. The *Seamons* court declined to decide "what liability, if any, the school district might have for the acts of its students." *Id.* at 1232 n. 7. In cases of teacher-to-student harassment, both the Sixth and Eighth Circuits have followed *Davis* and applied Title VII standards of liability. *Doe v. Claiborne County,* 103 F.3d 495, 513, 515 (6th Cir.1996) (holding that Title VII agency principles apply to discrimination claims brought under Title IX); *Kinman v. Omaha Public Sch. Dist.,* 94 F.3d 463, 467–69 (8th Cir.1996) (applying the *Davis* test and the "known or should have known" standard); *see also Does v. Covington County Sch. Bd. of Educ.,* 930 F.Supp. 554, 567–68 (M.D.Ala.1996) (applying the *Davis* standard to facts involving abuse of a student by a teacher). *But see Bolon v. Rolla Public Schools,* 917 F.Supp. 1423 (E.D.Mo.1996) (rejecting the "known or should have known" standard in a case of teacher harassment of a student).

In contrast, the Fifth Circuit has held that Title IX does not impose liability on school districts for peer hostile environment sexual harassment "absent allegations that the school district itself directly discriminated based on sex." *Rowinsky v. Bryan Indep. Sch. Dist.,* 80 F.3d 1006, 1008 (5th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 165, 136 L.Ed.2d 108 (1996). However, since *Rowinsky* the Fifth Circuit has had an opportunity to decide what liability standard should apply to teacher-to-student sexual harassment claims brought under Title IX. *Canutillo Ind. Sch. Dist. v. Leija,* 101 F.3d 393 (5th Cir.1996), *reh'g denied,* 106 F.3d 399 (1997). Although the court in *Leija* rejected a strict liability standard, *id.* at 399, it declined to

decide—in spite of its earlier decision in *Rowinsky*—whether Title VII or the Restatement Second of Agency provided the appropriate standard for school district liability. The Fifth Circuit has since decided the issue more conclusively, holding in a case of teacher-to-student sexual harassment, that in order to hold a school district liable under Title IX for a hostile educational environment, "a plaintiff must show that an employee who has been invested by the school board with supervisory powers over the offending employee *actually* knew of the abuse, had the power to end the abuse, and failed to do so." *Rosa H. v. San Elizario Ind. Sch. Dist.*, 106 F.3d 648, 650 (5th Cir.1997) (emphasis added).

District courts that have taken up these issues generally rely on the *Davis* factors. The differences in interpretation tend to center on the fifth element and what is necessary to establish a basis for institutional liability. Thus, in one case the court held that it was appropriate to consider direct and indirect evidence and found that intent may be inferred from "the totality of relevant evidence, including evidence of the school's failure to prevent or stop the sexual harassment despite actual knowledge of the sexually harassing behavior of students over whom the school exercised some degree of control". *Burrow v. Postville Community Sch. Dist.*, 929 F.Supp. 1193, 1205 (N.D.Iowa 1996). In *Bosley v. Kearney R–1 Sch. Dist.*, 904 F.Supp. 1006, 1020–21 (W.D.Mo.1995), the court concluded that intent could be found from "cumulative evidence of action and inaction which objectively manifests discriminatory intent." In *Oona R.–S.*, 890 F.Supp. at 1469, the court found that the requisite intent could be found in "the toleration of harassing behavior of male students, or the failure to take adequate steps to deter or punish peer harassment."[6] Yet another court has held recently that Title VII provides a model for defining the substantive standards under Title IX. *Collier v. William Penn Sch. Dist.*,

956 F.Supp. 1209, 1213–14 (E.D.Pa.1997) (noting only that district courts to adopt this approach "have employed slightly different tests of liability").

Other districts have held the plaintiff to a stricter showing, finding that liability does not attach unless there is actual notice. *See Bruneau v. South Kortright Central Sch. Dist.*, 935 F.Supp. 162, 169–74, 176 (N.D.N.Y. 1996) (rejecting constructive notice as insufficient); *Wright v. Mason City Community Sch. Dist.*, 940 F.Supp. 1412, 1420 (N.D.Iowa 1996) (finding negligence insufficient; school must know of harassment and intentionally fail to act).

In this District Judge Wilken has held in *Petaluma III* that the "knew or should have known" standard applies. 949 F.Supp. at 1426. It is also important to note that it has long been the rule in this Circuit that Title VII hostile environment liability can be established by showing that management-level employees knew, or in the exercise of reasonable care should have known, of the conduct creating the hostile environment and failed to remedy or prevent it. *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1515–16 (9th Cir.1989); *Ellison*, 924 F.2d at 881.[7]

This court finds after a review of the relevant case law that the approach taken in *Davis*, its progeny and *Petaluma III* is the better reasoned one. It is more consistent with the purposes of Title IX and the well-developed body of law under Title VII which the *Franklin* court implicitly found to be applicable. Therefore, this court holds that in light of *Franklin* a plaintiff may maintain a Title IX action for damages against a school district when the plaintiff alleges that the school district knew or should have known in the exercise of its duties that the plaintiff was being sexually harassed by other students and the school district failed to take steps reasonably calculated to end the harassment.

---

**6.** It should be noted that *Oona R.–S.* was decided based upon *Petaluma I* which is no longer the law of that case.

**7.** One circuit has held that an employer who fails to *investigate* a charge of sexual harassment in-

curs liability under Title VII if it turns out that the charge is meritorious and the employer fails to exercise due care to prevent the harassment. *McDonnell v. Cisneros*, 84 F.3d 256, 261 (7th Cir.1996).

This approach is also consistent with *Pennhurst*'s explanation of the contractual nature of Spending Clause legislation, Justice White's opinion in *Guardians*, and the *Franklin* decision. As *Franklin* made clear, the reason for not allowing money damages for unintentional violations is that "the receiving entity of federal funds lacks notice that it will be liable for a monetary award." *Franklin*, 503 U.S. at 74, 112 S.Ct. at 1037. The *Franklin* court concluded that the notice problem does not occur where there is intentional discrimination.

In addition, lack of notice poses no problem where those who stand in an agency relationship to the district sufficient to create liability are on notice of the harassing acts of students under their supervision and control. The "knew or should have known" standard requires actual notice or a severity or pervasiveness of harassing conduct that would ordinarily create notice. A teacher whose agency status is sufficient to hold the district liable for her harassment of a student, which was the case in *Franklin*, stands in no different position when she knows, or should be on notice with the exercise of reasonable care, of peer sexual harassment. Given the relationship of teachers to students and the duties that inhere in that relationship, this is a reasonable application of *Franklin*. Certainly, this rule is even more compelling in the case of principals, vice-principals and other school employees responsible for student discipline and a school's educational environment. In other words, an official or a supervisor of students such as a principal, vice-principal or teacher cannot put her head in the sand once she has been alerted to a severe and pervasive hostile educational environment.

At the time that Nicole M. alleges that the events described in the first amended complaint occurred, the plain meaning of Title IX and the *Franklin* decision had put school districts on notice that they would be liable for failing to take steps reasonably calculated to end student-to-student hostile environment sexual harassment of which they knew or should have known.

Nicole M.'s allegations that MUSD knew that Nicole M. was being sexually harassed by other students and intentionally failed to take steps that were adequate to stop the harassment meets the standards set forth by this court for maintaining a Title IX action for damages against a school district. Accordingly, defendants' motion to dismiss the Title IX claim against MUSD is denied.

## II. *Section 1983 Claim*

### A. *Relevant Rights*

Plaintiff's second cause of action alleges that Guzman intentionally deprived plaintiff of her civil rights in violation of 42 U.S.C. section 1983.[8] In her first amended complaint, plaintiff identified those rights of which Guzman deprived her as including, but not limited to, the right to equal protection provided by the Fourteenth Amendment and the right to privacy derived from the Fourth, Fifth, Ninth and Fourteenth Amendments. Additionally, in her opposition to defendants' motion to dismiss, plaintiff specifies that Guzman deprived her of rights secured by Title IX.

Guzman argues that she is entitled to qualified immunity on two grounds: first, because plaintiff cannot demonstrate that Guzman's alleged acts or omissions violated clearly established law, and alternatively, because Guzman's actions were reasonable. Additionally, Guzman argues that plaintiff's section 1983 action is barred because plaintiff has not alleged a "special relationship."[9]

---

**8.** Section 1983 provides, in relevant part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress."

**9.** Guzman also contends that plaintiff fails to state a claim under section 1983 because the first amended complaint establishes that Guzman was aware of the sexual harassment for less than one month before Nicole M. left MJHS. Guzman cites *Petaluma I* for the proposition that a section 1983 claim against a school official must be dismissed if that school official had knowledge of the harassment for less than a month before the plaintiff left school. *See Petaluma I*, 830 F.Supp.

*3. Analytical Framework of a Qualified Immunity Defense*

As a public school official, Guzman is entitled to assert qualified immunity as an affirmative defense. *See Wood v. Strickland,* 420 U.S. 308, 318, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975). However, qualified immunity applies only insofar as Guzman is being sued in her individual capacity, since qualified immunity is not available to a government official being sued in her official capacity. *Brandon v. Holt,* 469 U.S. 464, 472–73, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985). Thus, the suit against Guzman in her official capacity is unaffected by this discussion.

The defense of qualified immunity protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The qualified immunity test is a two-part inquiry. First, was the law governing the official's conduct clearly established, and second, under that law, could a reasonable official have believed his or her conduct was lawful. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871–72 (9th Cir.1993). The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. *Maraziti v. First Interstate Bank of California,* 953 F.2d 520, 523 (9th Cir.1992). However, it is not necessary that a prior decision rule "the very action in question" unlawful to deny a defendant the protection of qualified immunity. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *see*

also *Neely v. Feinstein,* 50 F.3d 1502, 1507 (9th Cir.1995). Rather, "the contours of the right must be sufficiently clear so that a reasonable official would know that his conduct violates that right." *Browning v. Vernon,* 44 F.3d 818, 823 (9th Cir.1995).

If the plaintiff meets her burden of demonstrating that the law was clearly established at the time of the alleged conduct, then the defendant bears the burden of establishing that her actions were reasonable, even if they violated the plaintiff's rights. *Neely,* 50 F.3d at 1509; *Maraziti,* 953 F.2d at 523. The reasonableness of an official's conduct is a question for the court. *Neely,* 50 F.3d at 1509.

*C. Analysis of Qualified Immunity Defense*

*1. Whether the Law at the Time of Guzman's Alleged Acts and Omissions Was Clearly Established*

*a. Title IX*

 Initially, this court addresses a threshold question not briefed by the parties: whether a cause of action under section 1983 will lie against a school official based on that official's alleged deprivation of rights conferred on a plaintiff by Title IX. In *Oona R.–S.,* 890 F.Supp. at 1459–62, a court in this district analyzed the issue in depth and found that such an action was viable.[10] The *Oona R.–S.* court engaged in the two-step inquiry applicable to determining when a statute creates a right enforceable under section 1983. First the court asks whether the statute at issue creates enforceable rights, and second inquiries whether Congress has foreclosed private enforcement through section 1983.

---

at 1578. This misstates the holding in *Petaluma I* which merely notes that in the complaint in that case the official did not have actual knowledge of the harassment until the month before plaintiff left school. Guzman provides no other reasoning or case law in support of this proposition. Moreover, Guzman's interpretation of the first amended complaint is questionable. Guzman construes the first amended complaint as alleging that Guzman was advised of the purported harassment in "mid-January 1993"; the court notes that the first amended complaint estimates the date on which Jacqueline M. first informed Guzman of the harassment as January 4, 1993. The court rejects Guzman's argument that plain-

tiff fails to state a claim under section 1983 based solely on the length of time that Guzman was aware of the sexual harassment before plaintiff left school.

**10.** The plaintiff in *Oona R.–S.* alleged that both a teacher and classmates sexually assaulted and harassed her. The plaintiff claimed that the defendant school officials failed to take adequate steps to prevent the teacher's conduct and that they created a hostile environment for female students, in part by failing to prevent the peer sexual harassment.

*Id.* at 1460 (citing *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)). After concluding that Title IX clearly creates an enforceable right identified by the Supreme Court in *Cannon v. University of Chicago*, 441 U.S. 677, 690, 99 S.Ct. 1946, 1954, 60 L.Ed.2d 560 (1979), the *Oona R.–S.* court next examined whether Congress precluded private enforcement. *Id.* Looking first at the statute itself, the court found no set of remedial devices in Title IX sufficiently comprehensive to demonstrate Congressional intent to preclude enforcement through section 1983. *Id.* at 1461. The *Oona R.–S.* court found further support for this conclusion in the *Franklin* decision, in which the Supreme Court reviewed amendments to Title IX and found that " 'Congress did not intend to limit the remedies available in a suit brought under Title IX.' " *Id.* (quoting *Franklin*, 503 U.S. at 71, 112 S.Ct. at 1036). Accordingly, the court in *Oona R.–S.* stated that because "the statute does not reflect Congress' intent to preclude plaintiffs from enforcing that right of way of section 1983 . . . the Court finds that a section 1983 action may properly be based on alleged violations of Title IX." *Id.* at 1462.

The conclusion reached in *Oona R.–S.*, however, is disputed among district courts. *See Mann v. University of Cincinnati*, 864 F.Supp. 44, 47–48 (S.D.Ohio 1994) (finding a sufficiently comprehensive enforcement scheme in Title IX to foreclose section 1983 claims brought against a school and its officials in their *official* capacities); *Bougher v. Univ. of Pittsburgh*, 713 F.Supp. 139, 146 (W.D.Pa.) ("A statute, such as Title IX, which contains its own remedies and is implemented through its own procedural scheme, does not permit bypassing what Congress has written by going directly to Section 1983.), *aff'd on other grounds*, 882 F.2d 74 (3d Cir. 1989); *Mabry v. State Bd. for Community Colleges & Occup. Educ.*, 597 F.Supp. 1235, 1239 (D.Colo.1984), *aff'd on other grounds*, 813 F.2d 311 (10th Cir.), *cert. denied*, 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987) (same). Unfortunately each of these

cases decided the question summarily, with little or no analysis of Title IX itself.

At the circuit court level, the results have been less than conclusive. In *Pfeiffer v. Marion Center Area Sch. Dist.*, 917 F.2d 779 (3d Cir.1990), the Third Circuit found plaintiff's section 1983 claims based on a violation of Title IX barred based on the Sea Clammers doctrine, which does not allow a plaintiff to use section 1983 to bypass the comprehensive enforcement scheme of a federal statute. *Id.* at 789 (citing *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). However, the court in *Pfeiffer* reached its conclusion with a notable paucity of analysis. In *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716 (6th Cir.1996), the Sixth Circuit addressed the question of whether section 1983 remedies were supplanted by Title IX and found that the Sea Clammers doctrine was inapplicable on two grounds. First, the court concluded that the doctrine was not implicated by plaintiff's use of section 1983 "to enforce wholly independent, and totally distinct, substantive due process rights." *Id.* at 723. Second, the court noted that Title IX was unlike the Education of the Handicapped Act ("EHA") or other such statutes that had been found to preclude a section 1983 action because in contrast to those statutes "Title IX contains no comprehensive enforcement scheme." *Id.* The *Lillard* Court further read *Cannon* as finding an implied private cause of action in Title IX due to the lack of enforcement mechanisms in the statute. *Id.* (citing *Cannon*, 441 U.S. at 683, 707, 99 S.Ct. at 1950–51, 1963). Lastly, the Tenth Circuit in *Seamons*, 84 F.3d 1226, adopted the holding of *Lillard* with respect to the viability of a section 1983 claim predicated on a constitutional violation. *Id.* at 1233–34. However, the *Seamons* court appeared to disagree that section 1983 could be used to enforce Title IX rights directly. *Id.* at 1234 n. 8 ("Of course, the 1983 action could not be predicated on a violation of Title IX itself. Such a duplicative effort would be barred.") The court in *Seamons* reached this conclusion by comparison to Title VII without explanation. *Id.*[11]

11. The Fifth Circuit seems to question the com-

prehensiveness of the Title IX scheme for these

Notably, in *Petaluma II*, 54 F.3d at 1449, the Ninth Circuit was presented with the question of whether an individual defendant could be sued for a Title IX violation using section 1983 and concluded that it could not reach the issue on a review of a denial of qualified immunity. *Id.* at 1449.

This court agrees with the reasoning in *Oona R.-S.* and *Lillard*. Unlike Title VII and the EHA, which contain detailed provisions for their enforcement, Title IX contains no such provisions. Therefore, the court finds that Title IX does not preclude plaintiff from bringing a section 1983 claim against Guzman in her individual capacity to enforce rights under Title IX. In fact, Guzman does not argue that plaintiff cannot maintain a section 1983 cause of action based on a violation of Title IX. In fact, Guzman does not argue that plaintiff cannot maintain a section 1983 cause of action based on a violation of Title IX. Instead, Guzman asserts that she is entitled to qualified immunity because at the time of the conduct that gave rise to the section 1983 cause of action, it was not clearly established that Guzman had a duty to prevent student-to-student sexual harassment. The court will therefore address Guzman's qualified immunity argument.

■ In *Petaluma II*, the Ninth Circuit considered whether it was clearly established, between the fall of 1990 and February 1992 (the relevant time period in that action), that school officials had a duty under Title IX to prevent peer sexual harassment. Noting that the allegedly impermissible conduct occurred prior to the Supreme Court's ruling in *Franklin*, the court held that as of February 1992, there was no clearly established duty under Title IX obliging school officials to remedy student-to-student sexual harassment. *Id.* at 1451–52. However, the court also noted that if the defendant school counselor

> engaged in the same conduct today, he might not be entitled to qualified immuni-

ty. We would then be required to consider the Supreme Court's recent *Franklin* decision. It might be that today a Title VII analogy likening [school officials] to an employer and [plaintiff] to an employee might provide an argument to consider in a similar Title IX case.

*Id.* at 1452.

Guzman's alleged unlawful conduct occurred in January and February 1993, *after* the Supreme Court issued its ruling in *Franklin*. To meet her burden of demonstrating that the law at the time of the allegedly unlawful conduct clearly established that Guzman had a duty under Title IX to remedy peer sexual harassment, plaintiff points to *Franklin* and to the court's discussion in *Petaluma II* of the possible effect that *Franklin* might have on the success of a qualified immunity defense.

As discussed earlier, this court interprets *Franklin* and its reliance upon *Meritor* as meaning that courts should look to Title VII case law and agency principles in determining the scope of Title IX rights and liabilities. *Franklin* was decided in 1992. Thus, by January and February of 1993, the Supreme Court had made it clear that sexual harassment was proscribed. Furthermore, the Court had applied Title VII *Meritor* standards to Title IX violations; Title VII case law had established that when one co-worker sexually harasses another co-worker because of the co-worker's sex, that co-worker discriminates on the basis of sex; and Title VII agency principles had established that an employer is liable for damages when it knew or should have known that one co-worker was sexually harassing another and it fails to take steps reasonably calculated to end the harassment. *Ellison*, 924 F.2d at 881–82.

One of the rationales for proscribing sexual harassment and treating it as sex discrimination is because of the deleterious effect it has on the educational environment and the

purposes. That circuit considered the question in the context of a case alleging employment discrimination by a state university. *Lakoski v. James*, 66 F.3d 751 (5th Cir.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 357, 136 L.Ed.2d 249, *reh'g denied*, —— U.S. ——, 117 S.Ct. 598, 136 L.Ed.2d 525 (1996). Finding that an em-

ployee could not bypass Title VII's administrative remedies by proceeding under Title IX, the court noted that "[w]e cannot say that Title IX provides a remedial scheme sufficiently comprehensive to indicate by itself that Congress intended to foreclose § 1983 suits based upon rights created by Title IX." *Id.* at 755.

students Title IX seeks to protect. Title IX itself commands the right of students to be free from sex discrimination and *Franklin* verifies that sexual harassment is sex discrimination within the meaning of Title IX. Moreover, by 1989 the Office of Civil Rights of the Department of Education had found that peer sexual harassment violated a student's rights under Title IX where the school knew or had reason to know of the harassment. *Petaluma I,* 830 F.Supp. at 1573. The *Franklin* court had no difficulty concluding that sexual harassment was a violation of Title IX. That all of the elements of a claim under Title IX were not fully developed does not relieve defendant from knowing the contours of the applicable law.

All of these considerations taken together with the state of Title VII and Title IX law in January 1993 counsels that a reasonable official would know that the harassing conduct and the failure to take prompt action to stop or deter it violated the law. Therefore, the court finds that plaintiff has met her burden of demonstrating that at the time of the allegedly impermissible conduct, the law clearly established that Guzman had a duty under Title IX to take steps reasonably calculated to end the peer sexual harassment of which Guzman knew or should have known.

#### b. *Equal Protection*

▉ Plaintiff alleges that Guzman's failure to take adequate steps to remedy peer sexual harassment rose to the level of intentional discrimination based on plaintiff's sex, thereby violating the Equal Protection Clause. Guzman has asserted the affirmative defense of qualified immunity. Plaintiff has the burden of showing that at the time of the alleged discrimination against her there was law clearly establishing that such discrimination violated her equal protection rights.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

The Equal Protection clause ... confers a 'federal constitutional right to be free from gender discrimination' at the hands of governmental actors. *Davis v. Passman,* 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979).... Well prior to 1988 the protection afforded under the Equal Protection Clause was held to proscribe *any* purposeful discrimination by state actors, be it in the workplace *or elsewhere,* directed at an individual solely because of the individual's membership in a protected class.

*Lindsey v. Shalmy,* 29 F.3d 1382, 1385–86 (9th Cir.1994) (second emphasis added); *see also Bator v. Hawai'i,* 39 F.3d 1021, 1027 (9th Cir.1994) ("By the mid–1970s, the Supreme Court had announced that the Equal Protection Clause proscribes purposeful discrimination by state actors, in the workplace and elsewhere, based solely on an individual's membership in a protected class."). Thus, it would seem rather well-established that a state actor, such as Guzman, would violate the Equal Protection Clause by intentionally discriminating on the basis of sex.

The court in *Howard v. Bd. of Educ.,* 893 F.Supp. 808 (N.D.Ill.1995), a case relied on by plaintiff, appears to reach such a conclusion. In *Howard,* plaintiff was a teacher who alleged that she was sexually harassed by students. Plaintiff claimed that the principal of the school knew of plaintiff's complaints concerning the sexual harassment but took no action to stop it, thereby intentionally permitting the harassment to continue. Plaintiff argued that the principal was liable under section 1983 because his acts and omissions violated plaintiff's equal protection rights. The principal asserted that he was entitled to qualified immunity because there was no clearly established law that he had a duty to take action in response to sexual harassment perpetrated by students against a teacher. The court rejected the principal's qualified immunity defense, explaining

[t]here can be no doubt that during the time of [the] alleged conduct (August 1991 to May 1993) sexual harassment in the workplace was constitutionally actionable as a denial of equal protection if such harassment was intentional. *See Trautvet-*

ter [v. Quick, 916 F.2d 1140, 1149 (7th Cir.1990) ]. As such, in a typical workplace, [the principal] could not claim qualified immunity if he had an intentional hand in plaintiff's sexual harassment, even if such harassment occurred through plaintiff's fellow employees.... [T]he precise question presented here is whether a principal of a public school would be objectively reasonable in believing that his intentionally permitting students to harass a teacher ... did not violate the constitution. Given the clearly established law surrounding sexual harassment in the workplace, combined with the unique role a principal plays in the administration of a public school, the court considers it to be objectively unreasonable to believe that a principal who intentionally permits students to sexually harass a teacher after the teacher voices complaints does not violate equal protection.

*Id.,* at 818–19. Although this court generally agrees with the *Howard* court's reasoning, further clarification of the nature and extent of equal protection rights is necessary to specify exactly what the Equal Protection Clause clearly prohibited at the time of Guzman's alleged acts and omissions.

The Equal Protection Clause does not impose on the state any duty to "protect the health or welfare of its people," but it does prohibit state actors from intentionally deciding not to provide protective services based on a person's sex. *Bohen v. City of East Chicago,* 799 F.2d 1180, 1189–90 (7th Cir. 1986) (Posner, J., concurring). For example, "[i]f a state or city deliberately refused to provide police protection for women, it would be violating the equal protection clause even though the people from whom it was failing to protect women were private persons rather than government agents." *Id.* at 1190 (Posner, J., concurring). Similarly, it was clearly established in January and February 1993 that a decision by Guzman not to take

steps to prevent sexual harassment suffered by Nicole M. because of plaintiff's sex would violate plaintiff's equal protection rights. *See Oona R.–S.,* 890 F.Supp. at 1472–73 (concluding that well-established precedent at the time made it clear that disparate treatment of male and female students with the intent to discriminate on the basis of sex violates students' constitutional rights). Plaintiff has met her burden of demonstrating that at the time of Guzman's alleged conduct, the Equal Protection Clause clearly prohibits sex-based intentional discrimination.

Guzman also argues that plaintiff has not alleged facts that would show that Guzman intentionally discriminated on the basis of plaintiff's sex. However, the court finds that plaintiff has pled adequate facts that Guzman was on notice of the peer sexual harassment suffered by plaintiff and failed to take steps to remedy it because of plaintiff's sex. Particularly in the context of sexual harassment, Guzman's alleged failure to act is significant because it may constitute evidence of her intent to discriminate on the basis of sex. As one court explained in the context of workplace sexual harassment, "a plaintiff can make an ultimate showing of sex discrimination by showing that ... the conscious failure of the employer to protect the plaintiff from the abusive conditions created by fellow employees amounted to intentional discrimination." *Bohen,* 799 F.2d at 1187.[12]

In reviewing a motion to dismiss, the complaint is construed in the light most favorable to plaintiff, and the motion is granted only if it appears beyond a doubt that plaintiff cannot prove facts entitling her to relief. Under this deferential standard, this court cannot say that plaintiff's allegations that Guzman knew about the peer sexual harassment but failed to take appropriate or adequate action to remedy the situation do not state facts that would show that Guzman intentionally discriminated against plaintiff because of plaintiff's sex. Given the facts alleged and

---

**12.** As Judge Posner opined in his *Bohen* concurrence,

> sexual harassment of men by women is extremely rare.... A policy of never responding to complaints about sexual harassment can therefore be analogized to a police department's policy of never responding to complaints of rape. Such a policy would violate the equal protection clause if no effort were made to justify the policy; it would not be saved by pointing out that men sometimes rape other men and that ... a woman might in principle rape a man.

*Bohen,* 799 F.2d at 1190 (Posner, J., concurring).

the early stages of the proceedings, this court cannot say that plaintiff will be unable to overcome defendant's affirmative defense of qualified immunity.

### c. Right to Privacy Under the Fourth, Fifth, Ninth, and Fourteenth Amendments

■ In her complaint, plaintiff alleges that she and a group of female students were summoned to Guzman's office to report any sexual harassment and to identify the harassers. During the meeting, Guzman indicated that she would keep the conversation confidential. Plaintiff claims that Guzman later broke her promise of confidentiality and that the harassers, as well as others at MJHS, learned that Nicole M. had reported the sexual harassment to Guzman. Plaintiff alleges that Guzman's actions abridged plaintiff's right to privacy as provided by the Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution in violation of section 1983.

In support of her position that the law clearly established that Guzman's actions violated plaintiff's right to privacy, plaintiff relies primarily on *Eastwood v. Department of Corrections*, 846 F.2d 627 (10th Cir.1988). In *Eastwood*, plaintiff had worked for the Oklahoma Department of Corrections ("DOC"). Eastwood alleged that another DOC employee sexually assaulted and molested her. Eastwood reported the incident to the DOC and claimed that during the course of the investigation the DOC investigator forced her to reveal irrelevant and embarrassing facts about her sexual history. Eastwood then brought a section 1983 claim against the investigator for violating her constitutional right to privacy. The investigator asserted a qualified immunity defense, maintaining that the law did not clearly establish that his actions violated Eastwood's right to privacy.

In denying the investigator's motion to dismiss on the basis of qualified immunity, the *Eastwood* court held that the constitutionally protected right to privacy "is implicated when an individual is forced to disclose information regarding personal sexual matters." *Id.* at 631. In reaching its conclusion, the court found the types of questions that the investigator asked significant; for example, the court indicated that there was little correlation between the kinds of questions the investigator asked about Eastwood's sexual history and the investigator's purpose in questioning her, which was to determine if Eastwood had fabricated her report of sexual assault. *Id.*

In contrast to the facts in *Eastwood*, neither Nicole M.'s complaint itself nor her opposition to Guzman's motion to dismiss indicates that Guzman "forced" plaintiff to answer questions. Indeed, plaintiff's opposition states that Guzman violated plaintiff's privacy rights by "encouraging" plaintiff to disclose private information. Plf's Amended Memo. in Opp. at 19. More importantly, the type of information regarding sexual history that the *Eastwood* investigator sought is distinguishable from the details that Guzman allegedly asked plaintiff to provide. Rather than inquiring about sexual history irrelevant to Nicole M.'s reports of sexual harassment, Guzman merely encouraged Nicole M. to tell Guzman about the nature of the sexual harassment and provide Guzman with the names of the harassers. Because of the significant differences between *Eastwood* and the instant action, the court finds that Guzman's inquiry did not violate plaintiff's clearly established privacy rights. The other cases cited by plaintiff are also unpersuasive on this point. *See, e.g., Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Thorne v. City of El Segundo*, 726 F.2d 459 (9th Cir.1983), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984).

Plaintiff additionally asserts that Guzman violated her privacy rights by promising to keep the information confidential and then breaking that promise. At issue in both *Eastwood* and *Thorne* was the disclosure by investigators of confidential information concerning the plaintiffs' sexual histories. *Eastwood*, 846 F.2d at 630 (noting allegation that defendant published offensive drawings of plaintiff and made insulting remarks about plaintiff at place of employment); *Thorne*, 726 F.2d at 462–63 (explaining that information plaintiff asked investigator to keep confi-

dential was included in a nonconfidential report). However, neither of these courts found that a constitutional right to privacy was violated when the investigator failed to protect the confidentiality of sensitive information disclosed to him by the plaintiff. Rather, both courts specified that it was the initial force applied to the plaintiff to answer questions concerning personal sexual matters that violated the plaintiff's right to privacy. *Eastwood,* 846 F.2d at 631, *Thorne,* 726 F.2d at 468.

Moreover, the type of information revealed in the breach of the promise of confidentiality in *Eastwood* and *Thorne* is again distinguishable from the information revealed by Guzman. *Eastwood* and *Thorne* involved the disclosure of highly personal yet irrelevant information concerning those plaintiffs' sexual histories. Here, Guzman asked for information concerning specific incidents of sexual harassment and the identity of the harassers. Moreover, given the basis for the present complaint, the court finds it hard to imagine how Guzman could take the action plaintiff desires—action reasonably calculated to end the harassment—without revealing the nature of the harassment, the identity of the harassers and even plaintiff's own identity.[13]

Because of the differences between the instant action and *Thorne* and *Eastwood,* those cases fail to satisfy plaintiff's burden of establishing that Guzman violated clearly established law when she encouraged plaintiff to disclose the incidents and perpetrators of sexual harassment, promised to keep the conversation confidential, and then failed to do so. Because plaintiff cannot demonstrate that Guzman's actions violated a clearly established constitutional right to privacy, Guzman is entitled to qualified immunity as to plaintiff's section 1983 claim against her in her individual capacity, insofar as it alleges that Guzman violated plaintiff's constitutional right to privacy.

### 2. Whether Guzman's Actions Were Reasonable

Guzman also maintains that she is entitled to qualified immunity from plaintiff's section 1983 claim because her actions were reasonable. Because the court finds that plaintiff has not met her burden of demonstrating that Guzman's alleged acts and omissions violated plaintiff's clearly established privacy rights, the court need only address Guzman's argument that her actions were reasonable in light of plaintiff's Title IX and equal protection claims.

#### a. Title IX

A section 1983 claim will lie against an official for violating Title IX rights—that is, for failing to take steps reasonably calculated to end peer sexual harassment when the official knew or should have known of the harassment. Accordingly, the question is whether a reasonable official in Guzman's position would have believed that Guzman's alleged acts and omissions were reasonably calculated to end peer sexual harassment. *See Neely,* 50 F.3d at 1509.

It is Guzman's burden to demonstrate that a reasonable official in her position would have believed that Guzman's alleged acts and omissions were lawful. *See Id.* To meet this burden, Guzman relies on *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). That case, however, concerned alleged due process violations in connection with the expulsion of students. *Id.* at 309–10, 95 S.Ct. at 994–95. Guzman fails to identify how the *Wood* Court's analysis supports a finding that a reasonable official in Guzman's position would have believed that Guzman's actions were reasonably calculated to end the sexual harassment reported to Guzman.

Guzman claims that her actions entailed suspending the student who allegedly touched plaintiff's breast, encouraging plaintiff to tell her about any sexual harassment that had occurred and to identify the harassers, moving plaintiff into new classes, and indicating that she would make further suspensions if she verified plaintiff's complaints. She then asserts that a reasonable official would have believed those actions to be rea-

---

**13.** For example, in order to isolate the harassers from plaintiff, it would be necessary to reveal plaintiff's identity. This is to say nothing of the due process rights the school and Guzman may owe to the alleged harassers.

**1386**

sonably calculated to end the alleged sexual harassment.

Although Guzman protests, it is appropriate for this court to look to Title VII case law to determine whether her assertions are accurate. The *Franklin* decision directed courts to look to Title VII case law to define the scope of rights and liabilities under Title IX. As a result, a question that often arises in Title VII cases—whether steps were taken which were reasonably calculated to end sexual harassment—will also arise in section 1983 actions that seek to enforce Title IX rights. It is proper for this court to look to Title VII case law for guidance.

Guzman's contention that moving plaintiff into new classes was a step reasonably calculated to end the sexual harassment is highly suspect in light of Ninth Circuit Title VII case law. *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir.1994) (indicating that changing shift of person complaining of sexual harassment rather than changing shift of harasser is insufficient to relieve employer of liability), *cert. denied*, 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995). The *Steiner* court also cited *Intlekofer v. Turnage*, 973 F.2d 773, 780 n. 9 (9th Cir.1992), and *Ellison*, 924 F.2d at 882, for the proposition that a victim of sexual harassment should not have to work in a less desirable location as a result of the employer's remedial plan. *Steiner*, 25 F.3d at 1464. These cases indicate that reasonable conduct involves taking action against the harasser. Thus, changing plaintiff's class schedule was not a step reasonably calculated to end the peer sexual harassment and a reasonable official would not have believed it to be.

Guzman also emphasizes the fact that she conferred with plaintiff and other female students about the harassment and indicated that she would order further suspensions if she could verify Nicole M.'s complaints. It is hard to see, however, how a reasonable official could believe that these actions, by themselves, would constitute steps reasonably calculated to end sexual harassment. Putting a stop to sexual harassment would seem to require taking some affirmative action against the harassers, and at the very least, speaking with them. A reasonable official

would not believe that a mere inquiry into the veracity of the complaints and a suggestion of further action would constitute steps reasonably calculated to end the harassment. Moreover, plaintiff alleges that by breaking her promise of confidentiality Guzman exacerbated the harassment.

Guzman's suspension of the boy who was accused of touching plaintiff's breast during class presents a closer question than the other actions taken by Guzman. However, the first amended complaint alleges that plaintiff was both verbally harassed and sexually assaulted. It is questionable whether the suspension of the student who allegedly touched plaintiff's breast would have a deterrent effect on the verbal harassers. Moreover, given the frequency and severity of the harassment of which Guzman was aware, according to the first amended complaint, a reasonable official would not have believed that the suspension of one student for one day was a step reasonably calculated to end the harassment.

b. *Equal Protection*

■ There is an inherent dilemma—recognized by the Ninth Circuit—in whether to consider the intentionality of the alleged individuals discrimination when deciding whether a "reasonable official" would believe that the defendant's actions were lawful. *Lindsey v. Shalmy*, 29 F.3d 1382, 1384 (9th Cir.1994). The *Lindsey* court explained that if courts did not take the defendant's alleged intentional discrimination into account when deciding qualified immunity, then officials would "always be immune in cases of alleged invidious discrimination", which is "not an acceptable result." *Id.* (citation omitted). Accordingly, in *Lindsey* the court determined that the proper threshold question is whether a reasonable official in the defendant's position would have known that subjecting the plaintiff to intentional discrimination based on sex would violate clearly established federal constitutional rights. *Id.*

In making this initial inquiry the court remarked that "[w]ell prior to 1988 the protection afforded under the Equal Protection Clause was held to proscribe *any* purposeful discrimination by state actors, be it in the

workplace or elsewhere, directed at an individual solely because of the individual's membership in a protected class." *Id.* at 1386 (citations omitted). Because of this well-established law, the *Lindsey* court held that in 1988, a reasonable official would have known that intentionally discriminating against a person in the workplace based on that person's sex was unlawful. *Id.* Similarly, this court finds that because the law conferring a constitutional right to be free of sex discrimination at the hands of state actors as well-established in January and February 1993, a reasonable official in Guzman's position would have known that intentionally discriminating against plaintiff because of her sex violated the Equal Protection Clause.

■ The court's inquiry does not end at this point, however. Although reviewing a motion for summary judgment, the *Lindsey* court noted that because *Branch v. Tunnell,* 937 F.2d 1382, 1386 (9th Cir.1991), *cert. denied,* 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994), "adopted a heightened pleading standard in cases where subjective intent is an element of the alleged constitutional tort," plaintiffs would also be required to meet a heightened pleading standard in cases such as the instant action, where the plaintiff alleges that a state actor intentionally discriminated on the basis of sex in violation of the Equal Protection Clause. *Lindsey,* 29 F.3d at 1385. Relying on *Lindsey* and *Branch,* the court in *Oona R.–S.* explained that even when a reasonable official in the defendant's position would have known that intentional discrimination based on sex was unlawful, a plaintiff must present "non-conclusory allegations of subjective motivation and support[ ] those allegations by sufficient direct or circumstantial evidence" to survive a motion to dismiss. *Oona R.–S.,* 890 F.Supp. at 1472.

Here plaintiff's allegations satisfy this heightened pleading standard. Plaintiff does not merely claim, in a conclusory fashion, that Guzman intentionally discriminated against her because of her sex. Rather, plaintiff sets forth specific instances in which Guzman allegedly failed to act or acted in such a way as to exacerbate the harassment. Plaintiff has sufficiently met the requirements of the heightened pleading standard to survive a motion to dismiss.

### 3. *Whether Plaintiff Must Allege a "Special Relationship" to State a Claim Under Section 1983*

■ Guzman argues that plaintiff fails to state a claim under section 1983 because she does not allege that there is a "special relationship" between plaintiff and Guzman that gives rise to a constitutionally required affirmative duty to prevent peer sexual harassment. In support of this position, defendant relies on *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

In *DeShaney* the Supreme Court explained that generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004. However, the Court then stated that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198, 109 S.Ct. at 1004. Apparently Guzman understands plaintiff as attempting to state a section 1983 claim based on a violation of due process rights and as failing to allege a special relationship that triggers an affirmative duty of care and protection toward Nicole M. This court, however, does not interpret plaintiff's first amended complaint in such a fashion. Rather, this court construes the complaint as stating a cause of action under section 1983 for violation of rights provided by Title IX and by the Equal Protection Clause.

The cases cited by Guzman in support of her position all concern section 1983 claims based on a due process violation. *See id.; D.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364, 1368–73 (3d Cir. 1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *J.O. v. Alton Community Unit Sch. Dist.,* 909 F.2d 267, 271–73 (7th Cir.1990); *Petaluma I,* 830 F.Supp. at 1578–81 (dismissing plaintiff's section 1983 claim "to the extent that it is grounded in the special relationship theory"). To state a viable claim under section 1983 for violation of Title IX or the Equal Protection

Clause, there is no requirement that plaintiff allege a "special relationship." *See DeShaney*, 489 U.S. at 197 & n. 3, 109 S.Ct. at 1004 & n. 3 ("[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause. . . . The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause. But no such argument has been made here.") (citation omitted). In the present action, plaintiff brings a section 1983 claim based on the alleged violation by a school official of rights guaranteed by Title IX and the Equal Protection Clause. Accordingly, plaintiff's section 1983 cause of action is not barred for failure to allege a special relationship.

### III. *Unruh Civil Rights Act Claim*

Plaintiff brings a third cause of action against all defendants for denying plaintiff her civil rights in violation of the Unruh Civil Rights Act, California Civil Code sections 51, 51.5 and 52(a). Section 51 provides: "All persons within the jurisdiction of this state are free and equal and no matter what their sex . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal.Civ. Code § 51 (West 1982). Section 51.5 states: "No business establishment of any kind whatsoever shall discriminate against . . . any person in this state because of the . . . sex . . . of the person." Cal.Civ.Code § 51.5. Section 52(a) declares: "Whoever denies, aids, or incites a denial, or makes any discrimination or distinction contrary to Section 51 or 51.5, is liable for each and every offense for the actual damages, and any amount that may be determined." Cal.Civ.Code § 52(a).

▮ Initially, this court notes that while the language of the Unruh Act might suggest that it does not apply to discrimination in public schools, the California Supreme Court has explained that "the Legislature intended that the phrase 'business establishments' be interpreted 'in the broadest sense

reasonably possible.' " *Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal.3d 72, 78, 219 Cal.Rptr. 150, 707 P.2d 212 (1985) (quoting *Burks v. Poppy Constr. Co.*, 57 Cal.2d 463, 468, 20 Cal.Rptr. 609, 370 P.2d 313 (1962)). In *Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F.Supp. 947 (E.D.Cal.1990), the court relied on *Isbister* to hold that public schools are "business establishments" within the meaning of the Unruh Act. *Id.* at 952. This court agrees with that conclusion, and thus finds that for purposes of the Unruh Act, MUSD is a "business establishment." [14] *See also, Petaluma I*, 830 F.Supp. at 1581–82 ("Public schools . . . *are* business establishments within the meaning of the Act."). Additionally, because section 52(a) allows plaintiffs to recover damages against "[w]hoever . . . makes any discrimination or distinction contrary to Section 51 or 51.5," plaintiff may bring a claim against Guzman and Crocker for violations of those sections. *See Aikins v. St. Helena Hosp.*, 843 F.Supp. 1329, 1339 (N.D.Cal.1994) (rejecting defendant's argument that section 51 did not give rise to any cause of action against him in his capacity as an independent contractor of a business establishment).

Defendants argue that the court should dismiss plaintiff's Unruh Act claim on a number of grounds. First, defendants contend that plaintiff has failed to set forth any facts that would show that she was denied "advantages, facilities, privileges, or services" at MJHS because of her sex. Defendants further claim that the Unruh Act prohibits only intentional discrimination and that plaintiff has not pled any facts that would show that defendants intentionally discriminated against plaintiff. Finally, defendants maintain that plaintiff's claim should be dismissed because no case to date has applied the Act to a situation involving an alleged failure to remedy peer sexual harassment.

▮ The California Supreme Court has held that the Unruh Act prohibits only intentional discrimination and not practices that have a disparate impact on one class of persons. *Harris v. Capital Growth Investors*

---

**14.** Although Guzman and MUSD seem to suggest in their memorandum in support of their motion to dismiss that MUSD is not a "business estab-

lishment," in their reply brief they concede that MUSD is a business establishment within the meaning of the Act.

*XIV,* 52 Cal.3d 1142, 1149, 1172, 278 Cal. Rptr. 614, 805 P.2d 873 (1991). Defendants contend that plaintiff has not set forth any facts that would show that she was denied "advantages, facilities, privileges, or services" at MJHS because of her sex or that would demonstrate that defendants intentionally discriminated against plaintiff. However, in light of the California Supreme Court's instruction "to interpret the Act's coverage 'in the broadest sense reasonably possible,'" *Isbister,* 40 Cal.3d at 76, 219 Cal.Rptr. 150, 707 P.2d 212 (quoting *Burks,* 57 Cal.2d at 468, 20 Cal.Rptr. 609, 370 P.2d 313), this court construes an inadequate response to complaints of sexual harassment as a denial of "advantages, facilities, privileges, or services." It is true that under *Harris* plaintiff must adequately plead that defendants intentionally failed, because of plaintiff's sex, to appropriately address plaintiff's reports of sexual harassment. However, as this court has explained, plaintiff has met this burden.

Defendant's insistence that allegations of inadequate action on the part of a school district and its officials cannot rise to the level of intentional discrimination is erroneous. That argument was faulty in connection with the Equal Protection Clause and it is equally unavailing here. It seems odd to suggest that a student who is subjected to a hostile educational environment by virtue of peer sexual harassment would not be deprived of some of the advantages and privileges of a public education. Plaintiff has pled sufficient facts to allege that she may have been intentionally deprived of some advantages, privileges, or services at MJHS and that defendants may have otherwise intentionally discriminated against her because of her sex.

 Additionally, the court notes that only section 51 has specific language regarding entitlement to full "advantages, facilities, privileges, or services". Section 51.5 provides somewhat more generic language: "No business establishment . . . shall discriminate against . . . any person in this state because of . . . sex". Thus, even if defendants' were correct that an inadequate response to complaints of sexual harassment does not constitute a violation of section 51, plaintiff could still maintain this cause of action under section 51.5 because she has sufficiently alleged intentional discrimination.

Finally, defendants' argument that no case to date has applied the Unruh Act to a situation involving peer sexual harassment is also unpersuasive. Defendants state that the Act was not meant to create liability for failing to prevent peer sexual harassment. Yet it is defendants who cite no case law to support this contention. Given the broad reach that the California Supreme Court has attributed to the Unruh Act, defendants' argument fails.

IV. *State Law Immunity*

 Plaintiff's fourth claim is brought against MUSD and Crocker for negligent retention, supervision, training and discipline, and her fifth claim is against all defendants for negligent infliction of emotional distress. Relying on California Government Code sections 815.2(b), 820.2 and 820.8, defendants contend that they are immune from these claims because the alleged acts or omissions on which they are based were discretionary. Section 820.2 states: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal.Gov't Code § 820.2 (West 1995). Thus, this court must initially decide whether the defendants' alleged acts and omissions were discretionary acts.

" 'Generally speaking, a discretionary act is one which requires the exercise of judgment or choice. Discretion has also been defined as meaning equitable decision of what is just and proper under the circumstances.' " *Kemmerer v. County of Fresno,* 200 Cal. App.3d 1426, 1437, 246 Cal.Rptr. 609 (1988) (quoting *Burgdorf v. Funder,* 246 Cal.App.2d 443, 449, 54 Cal.Rptr. 805 (1966)); *see also Lopez v. Southern Cal. Rapid Transit Dist.,* 40 Cal.3d 780, 793–94, 221 Cal.Rptr. 840, 710 P.2d 907 (1985). Decisions by a school principal or superintendent to impose discipline on students and conduct investigations of complaints necessarily require the exercise of

judgment or choice, and accordingly are discretionary, rather than ministerial, acts. *Accord Petaluma I*, 830 F.Supp. at 1582–83. As a result, neither Crocker nor Guzman are liable under plaintiff's fourth or fifth claims for those alleged acts or omissions which were discretionary and not otherwise covered by statute.

Because plaintiff's fifth cause of action is a common law claim, Guzman and Crocker are entitled to immunity from it. It is uncertain from the complaint whether plaintiff bases her fourth cause of action on a statute, specifically California Education Code sections 212.5 and 260, or on common law. However, even if the complaint means to base the fourth claim on sections 212.5 and 260, Crocker and Guzman are entitled to immunity. The California Education Code sections relied upon by plaintiff provide no private right of action. *See* discussion infra part V. Thus, these sections are not a statutory exception to the general rule furnishing immunity to public employees for their discretionary acts.

Additionally, California Government Code section 815.2(b) provides the same immunity for public entities as section 820.2 provides for public employees. Cal. Gov't Code § 815.2(b). Accordingly, MUSD is also entitled to immunity from plaintiff's fourth and fifth causes of action.

## V. *Education Code Claim*

■ Plaintiff's sixth claim charges MUSD and Crocker with violating the prohibition against sexual harassment in educational institutions as provided by California Education Code sections 200, 212.5, 212.6, 220 and 230. Section 220 provides: "No person shall be subjected to discrimination on the basis of sex in any program or activity conducted by an educational institution". Cal.Educ.Code § 220 (West 1994). Section 230 defines sex discrimination to include, *inter alia*, harassment or other discrimination among persons, including students, on the basis of sex. Cal.Educ.Code § 230(d). MUSD and Crocker argue that sections 200, 212.5, 212.6, 220 and 230 do not provide a private right of action.

Neither of the parties nor the court has found any authority explicitly confirming or denying the existence of a private right of action under the sections relied upon by plaintiff. It seems relatively well-established under California law that "[t]o imply a private right of action, the court must determine that a private right of action is *needed* to ensure the effectiveness of the statute." *Arriaga v. Loma Linda Univ.*, 10 Cal. App.4th 1556, 1564, 13 Cal.Rptr.2d 619 (1992); *see also Middlesex Ins. Co. v. Mann*, 124 Cal.App.3d 558, 570, 177 Cal.Rptr. 495 (1981). Here, plaintiff has a private right of action under Title IX, section 1983 and the Unruh Civil Rights Act. As a result, a private right of action need not be inferred under the California Education Code sections cited by plaintiff. Accordingly, defendants' motion to dismiss plaintiff's sixth cause of action is granted.

## CONCLUSION

For the foregoing reasons, the court hereby

(1) DENIES defendants' motion to dismiss plaintiff's Title IX claim against MUSD;

(2) DENIES defendants' motion to dismiss plaintiff's section 1983 claim against Guzman insofar as plaintiff alleges that Guzman violated plaintiff's Title IX rights;

(3) DENIES defendants' motion to dismiss plaintiff's section 1983 claim against Guzman insofar as plaintiff alleges that Guzman violated plaintiff's equal protection rights;

(4) GRANTS defendants' motion to dismiss plaintiff's section 1983 claim against Guzman in her individual capacity insofar as plaintiff alleges that Guzman violated plaintiff's constitutional right to privacy;

(5) DENIES defendants' motion to dismiss plaintiff's claim under California Civil Code sections 51, 51.5 and 52(a);

(6) GRANTS defendants' motion to dismiss plaintiff's claim of negligent retention, supervision, training, and discipline;

(7) GRANTS defendants' motion to dismiss plaintiff's claim of negligent infliction of emotional distress; and

(8) GRANTS defendants' motion to dismiss plaintiff's claim under California Education Code sections 200, 212.5, 212.6, 220 and 230.

IT IS SO ORDERED.