Opinion
DISCO, J.
Respondent brought an unlawful detainer action in March of 1991 to evict appellant from a garage unit which had been used by appellant and her family as living quarters for approximately four years. A department of building and safety order had been outstanding since approximately 1989 requiring respondent to cease the illegal use of this space. Appellant answered tiie complaint with a general denial, and raised a number of affirmative defenses, including a defense that the premises were untenantable and a defense that the premises were subject to the Los Angeles Rent Stabilization Ordinance (Los Angeles Mun. Code, ch. XV, art. I, § 151.00 et seq. [RSO hereafter]). The trial court found that appellant owed no money to respondent, and awarded possession of the premises to respondent.
*Supp. 4 Appellant contends on appeal that the court erred in awarding possession to respondent because it was established at trial that respondent had not paid relocation benefits to appellant, as required under the RSO. We agree.
There is no question but that respondent owes appellant relocation benefits. Section 151.09, subsection A, subdivision 11 of the RSO permits a landlord to evict a tenant “in order to comply with a governmental agency’s order to vacate the building housing the rental unit as a result of the violation of the Los Angeles Municipal Code or any other provision of law.” When a landlord evicts a tenant under this section, he or she must pay relocation benefits. Section 151.09, subsection G of the RSO states that: “[i]f the termination of tenancy is based on the grounds set forth in Subdivisions 8, 9, 10 or 11 of Subsection A of this Section then the landlord shall pay a relocation fee of $5,000.00 to qualified tenants and a $2,000.00 fee to all other tenants.”
The issue raised by this appeal is whether a tenant may remain in possession until relocation benefits are provided under the RSO when the occupancy itself is unlawful. Generally, if the object of a contract is unlawful, the entire contract is void. (Civ. Code, §§ 1550, 1598; see generally, 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 430, 441, pp. 386, 396.) A party who is not in pari delicto may be entitled to relief under certain circumstances, but the relief is limited to rescission and restitution; the party is not entitled to enforce the contract. (1 Witkin, supra, at § 450, p. 401.) This rule applies to the lease of real property. Where, as here, an occupancy violates a zoning or building code enacted for the benefit of the general public, the use itself is illegal, and the defect is thus unccorectable, the lease agreement is held to be void and unenforceable by either party.[1] The landlord is not entitled to back rent, and the tenant is not entitled to possession. (Gruzen v. Henry (1978) 84 Cal.App.3d 515, 518-519 [148 Cal.Rptr. 573]; Shephard v. Lerner (1960) 182 Cal.App.2d 746, 750 [6 Cal.Rptr. 433].)
Appellant argues, however, that this is not the result contemplated under the RSO, where the tenant is given the option of remaining in possession, irrespective of the basis for the eviction, when the landlord fails to provide relocation benefits. Section 151.09, subsection H of the RSO *Supp. 5 provides that: “in any action by a landlord to recover possession of a rental unit, the tenant may raise an affirmative defense the failure of the landlord to comply with Subsection G of this Section.”[2]
 An “affirmative defense” is one which “sets forth facts from which it results that, notwithstanding the truth of the allegations of the complaint, no cause of action existed in the plaintiff at the time the action was brought.” (Godard v. Fulton (1863) 21 Cal. 430, 436; see, generally, 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1004, pp. 425, 426.) We conclude that the clear intent of this provision is to preclude the landlord from terminating a tenancy and recovering possession in an unlawful detainer action where the tenant raises and establishes as an affirmative defense[3] that the landlord has failed to pay relocation benefits, even if the basis of the eviction is an illegal use.
Enforcement of the relocation benefit provisions of the RSO thus conflicts with enforcement of the city’s building and zoning codes where the occupancy is illegal. We are persuaded, however, that the Los Angeles City Council intended to give priority to enforcement of the RSO under these circumstances.[4] The legislative history makes it clear that the council was well aware when it passed Ordinance No. 164685, amending the RSO to include evictions based on illegal units in the section that requires the payment of relocation benefits, that application of the ordinance could delay enforcement of the city’s zoning and building codes. The motion which led to the presentation of Ordinance No. 164685 states, in pertinent part: “Property owners who practice and profit from illegal conversions or additions must cease such activities. Such practices are inconsistent with the intent of the city’s policy to provide quality housing for tenants. Such practices also violate the City’s zoning and building codes.” At the time it passed the ordinance, the council also knew that other sections of the RSO then in effect required payment of relocation assistance within 15 days of service of the notice of termination (subsection G, subd. 2) and provided that failure to pay relocation benefits under subsection G would defeat an action for *Supp. 6 possession (subsection H). (Yoffie v. Marine Hospital District (1987) 193 Cal.App.3d 743, 747 [238 Cal.Rptr. 502] [Legislature is presumed to know existing law at the time it enacts a statute].) No effort, however, was made to amend these other provisions in order to permit immediate enforcement of the zoning or building code. Failure to change the law in a particular respect when the subject is before the Legislature, which makes other changes, is indicative of an intention to leave the law unchanged in such respect. (Cole v. Rush (1955) 45 Cal.2d 345, 355 [289 P.2d 450, 54 A.L.R.2d 1137], overruled on other grounds in Vesely v. Sager (1971) 5 Cal.3d 153, 167 [95 Cal.Rptr. 623, 486 P.2d 151].)
This conclusion best reconciles the stated policies behind both statutory schemes. Deferring vacation of the unit until the landlord has paid relocation assistance serves the purpose of the RSO by affording tenants the financial means to secure replacement housing prior to eviction. (See RSO, § 151.01, “Statement of Purpose.”) It is consistent with the city council’s view that landlords are the ones who profit from them, as reflected in its statement of intent classifying an eviction based on illegal conversion or addition as a tenant “no fault” ground. (RSO, § 151.09, subsection A, subd. 11.) It places maximum pressure on the landlord to conform with both the RSO and the zoning laws since he or she remains subject to criminal prosecution for violating the applicable RSO requirements (§ 151.10, subsection B) and the applicable building and zoning code requirements (L.A. Mun. Code, § 11.00, subsection (m)) so long as he or she fails to provide the benefits due. Finally, we note that an ultimate safety valve exists if noncompliance with the zoning and building codes creates a hazardous condition, posing an immediate threat to health or safety; the department of building and safety can require the tenant to vacate under Los Angeles Municipal Code section 91.8905 under these circumstances, or the city can move to abate the public nuisance (Civ. Code, § 3494; see, e.g., People v. Oliver (1948) 86 Cal.App.2d 885, 889-890 [195 P.2d 926]).
Since respondent admitted at trial that he failed to pay relocation benefits, appellant established a defense to respondent’s right to possession under section 151.09, subsection A, subdivision 11 of the RSO.
 The judgment in favor of the landlord for possession is reversed;[5] judgment is to be entered in favor of appellant. *Supp. 7 Appellant to recover costs on appeal.
Roberson, R J., and Johnson, J., concurred.

This is to be contrasted with the situation where the occupancy itself is not illegal, but the units do not conform with certain housing or building codes and the defects are, by definition, correctable. Where such defects are substantial and breach the implied warranty of habitability, the tenant may, at his or her option, remain in possession and is relieved of the obligation to pay contract rent, but is liable for the reasonable value of the use and occupancy of the property in its defective condition. (Green v. Superior Court (1974) 10 Cal.3d 616, 638-639 [111 Cal.Rptr. 704, 517 P.2d 1168].)

Section 151.09, subsection H provides, in addition, that “any landlord who fails to provide monetary relocation assistance as required by Subsection G of this Section shall be liable in a civil action to the tenant to whom such assistance is due for damages in the amount the landlord has failed to pay, together with reasonable attorney fees and costs as determined by the court.”

We consider appellant to have adequately raised the landlord’s failure to pay relocation benefits as an affirmative defense here. Appellant alleged in her answer that the tenancy was subject to the RSO, and specifically argued in her posttrial brief that respondent’s admitted failure to pay relocation benefits should defeat his action for possession.

This case involves priority as between two city ordinances. We do not encounter here, and do not decide, the question of whether the city could precondition eviction pursuant to an order to vacate for violation of state law on compliance with its own relocation assistance provisions. (See, generally, Birkenfeld v. City of Berkeley (1976) 17 Cal.3d 129 [130 Cal.Rptr. 465, 550 P.2d 1001].)

The correlative question, whether the tenant is liable for rent during this period, is not directly raised in this appeal. However, we note that the RSO recognizes that the tenant is not at fault under the circumstances encountered here and provides that the landlord-tenant relationship shall continue until relocation benefits are paid. This relationship gives rise to an *Supp. 7 obligation to pay the reasonable value of the use and occupancy of the premises under a privity of estate theory, even if the lease agreement is considered void because it contemplates an illegal use of the property. (See 4 Witkin, Summary of Cal. Law, supra, Real Property, §§ 543, 554, pp. 712, 713, 723.) The same result would be reached under a contractual theory where the circumstances of the illegal use constituted a breach of the implied warranty of habitability, obligating the tenant to pay only the reasonable value of the use and occupancy of the premises in its defective condition. (Green v. Superior Court, supra, 10 Cal.3d at pp. 634-639; Hinson v. Delis (1972) 26 Cal.App.3d 62, 68-71 [102 Cal.Rptr. 661].) In this case the trial court, by awarding appellant no money, impliedly found that the premises had no value.