Sharon GRIER, et al., Plaintiffs,

v.

Jerry BROWN, et al., Defendants.

No. C01–4980 TEH.

United States District Court,
N.D. California.

Nov. 6, 2002.

John Murcko, Oakland, CA, for Plaintiffs.

Rachel Wagner, Oakland City Attorney's Office, Oakland, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

THELTON E. HENDERSON, Senior District Judge.

This matter came before the Court on October 7, 2002, on Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. After careful consideration of the parties' written briefs and oral arguments, and good cause appearing, the Court GRANTS the motion to dismiss.

## FACTUAL BACKGROUND [1]

Plaintiffs are five African–American and one Mexican–American former tenants of 10031–59 MacArthur Boulevard, Oakland, California. Marvin Budderman, whom Plaintiffs originally named as a Defendant but have since voluntarily dismissed from this suit, is Plaintiffs' former landlord. Defendants are the City of Oakland, Oakland Mayor Jerry Brown, and two city employees, David Carillo and Pelayo Llamas. Plaintiffs assert two causes of action against Defendants: violation of 42 U.S.C. § 1983 and violation of California Civil Code § 51.

Plaintiffs' Second Amended Complaint contains the following allegations: Budderman and other landlords made contributions to Defendant Brown's mayoral campaigns in 1998, 1999, and 2000. Second Amended Complaint ("Compl.") at ¶ 8. Defendants Carillo and Llamas subsequently acted in concert with Defendants Brown and the City of Oakland to deprive Plaintiffs of their First, Fourth, and Fifth Amendment rights. *Id.* at ¶ 5. Oakland city officials, including Defendants Llamas and Carillo, "have entered upon the abodes and residences of the plaintiffs without search warrants or arrest warrants, and threatened by words and actions to issue citations, committed assaults and batteries upon plaintiffs, threatened to place them under arrest and search their homes and to deprive them of their homes, places of abode and dwelling houses." *Id.* at. ¶ 10.

Plaintiffs state that, in November of 2001, Defendants Brown, Carillo, and Llamas, together with Budderman, entered into a conspiracy to "deprive the plaintiffs of their homes, their place of residence, their living quarters and their right to determine the occupation of the abodes by threat, intimidation and fear of physical force and violence." *Id.* at ¶ 9. Over a two-month period, Defendants Brown and the City of Oakland conspired with Defendants Carillo and Llamas "to illegally enter [Plaintiffs'] homes and make threats and use force to deprive them of their properties." *Id.* at ¶ 11. Plaintiffs assert that Defendants, whose conduct was allegedly

---

1. The Court adopts the statement of judicially noticed facts set forth in its June 12, 2002, Order Re: Defendants' Motion to Dismiss and Motion for Protective Order and Stay of Discovery ("June 12 Order"). The factual background provided herein reflects the allegations in Plaintiffs' Second Amended Complaint.

motivated by a desire to acquire possession of the property at 10031–59 MacArthur Boulevard, *id.* at ¶ 13, "have continued to threaten, intimidate and harass the plaintiffs and deprive them of their residence, homes, and domiciles by sending agents there, making threats to them, and locking the doors and changing the locks on the doors." *Id.*

## PROCEDURAL POSTURE

Plaintiffs instituted this action with the filing of their Complaint on December 19, 2001. Plaintiffs asserted three causes of action against Defendants Jerry Brown and the City of Oakland: (1) violation of 42 U.S.C. § 1983, (2) violation of 42 U.S.C. § 1985, and (3) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(b) and (c). On January 15, 2002, Plaintiffs filed their First Amended Complaint, which included no new substantive allegations. Defendants brought a motion to dismiss on March 15, 2002. This Court granted Defendants' motion on June 12, 2002. Plaintiffs' § 1985 and RICO causes of action were dismissed with prejudice. Two of Plaintiffs' § 1983 claims—the Sixth Amendment jury trial and Fourteenth Amendment equal protection claims—were dismissed with prejudice, and Plaintiffs' remaining allegations—the First, Fourth, and Fifth Amendment claims—were dismissed without prejudice. Plaintiffs filed their Second Amended Complaint on June 19, 2002, and Defendants brought a motion to dismiss on July 8, 2002.

## LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) when a plaintiff's allegations fail to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In deciding whether a case should be dismissed, a court may generally only consider the complaint and any attached exhibits that have been incorporated therein. *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994). However, a court may consider a document external to the complaint if the complaint "necessarily relies" on the document and no party contests the document's authenticity. *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998). In addition, as noted above, a court may also take judicial notice of matters of public record. *Lee v. City of Los Angeles,* 250 F.3d 668, 688–89 (9th Cir.2001)

The court must accept as true the factual allegations of the complaint and construe those allegations in the light most favorable to the plaintiff. *Zimmerman v. City of Oakland,* 255 F.3d 734, 737 (9th Cir.2000). It should not grant dismissal unless "it appears beyond a doubt that [the] plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295 (9th Cir. 1998); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal may be based upon "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Department,* 901 F.2d 696, 699 (9th Cir.1990). Moreover, dismissal should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman,* 143 F.3d at 1296.

## DISCUSSION

### I. Procedural Defects

Defendants assert that Plaintiffs' case is infected with two procedural defects that violate both the Federal Rules of Civil Procedure and this Court's orders, and therefore should result in the dismissal of this action against Defendants David Carillo and Pelayo Llamas.[2] First, Defendants

---

**2.** Defendants Carillo and Llamas contend that Plaintiffs' alleged violations of the Federal

Rules of Civil Procedure and the Court's orders are sufficient to warrant dismissal of the

claim that Plaintiffs failed to obtain leave to amend their First Amended Complaint to name Carillo and Llamas as defendants and to bring a cause of action under the Unruh Act. Second, Defendants contend that Plaintiffs failed to serve Carillo and Llamas in a timely fashion. The Court will address these alleged procedural flaws in turn.

## A. Improper Amendment of Plaintiffs' Complaint

■ Defendants contend Plaintiffs' Second Amended Complaint, which names two new defendants and asserts a new state law cause of action, should be dismissed for failure to comply with the Federal Rules of Civil Procedure and this Court's orders. Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss Second Amended Complaint ("Defendants' Motion") at 2; Defendants' Reply at 1, 4. The Second Amended Complaint names Pelayo Llamas, a Deputy City Attorney, and David Carillo, a Code Inspector, as defendants in this action. Plaintiffs also allege, for the first time, that Defendants have violated the Unruh Civil Rights Act, Cal. Civ.Code § 51. For the following reasons, the Court concludes that these amendments are proper.

Federal Rule of Civil Procedure 15(a) states that a party may amend a pleading once as a matter of course, which Plaintiffs did when they filed their First Amended

complaint against them. They do, however, join in the original defendants' motion to dismiss the Second Amended Complaint. *See* Defendants' Reply Memorandum of Points and Authorities in Support of Motion to Dismiss Second Amended Complaint ("Defendants' Reply") at 2. Unless otherwise noted, the term "Defendants" shall be used to refer to Mayor Jerry Brown, the City of Oakland, David Carillo, and Pelayo Llamas.

3. Defendants' counsel did not stipulate to an amendment adding new defendants or new claims to the case. *See* Declaration of Rachel Wagner at 2.

Complaint on January 15, 2002. Rule 15(a) further provides that a party may otherwise amend a pleading "only by leave of court or by written consent of the adverse party, and leave shall be freely granted when justice so requires."[3] Fed. R.Civ.P. 15(a). Rule 15 "reflects the limited role" assigned to pleadings in federal court, which can be described as providing the parties involved "with fair notice of the general nature and type of the pleader's claim or defense." Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial*, § 8:362 (2002). Because of the strong federal policy favoring resolution of cases on their merits, leave to amend should be freely granted unless the opposing party can make a showing of unfair prejudice or bad faith on the part of the moving party. *Id.* at § 8:400, *citing Martinez v. Newport Beach City*, 125 F.3d 777, 785 (9th Cir.1997), *overruled in part on other grounds, Green v. City of Tucson*, 255 F.3d 1086, 1093 (9th Cir.2001). The policy regarding leave to amend is to be applied with "extraordinary liberality." *Id., citing Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990).

This Court did in fact grant Plaintiffs' leave to amend. In dismissing Plaintiffs' First, Fourth, and Fifth Amendment claims without prejudice, the Court's June 12 Order provides that "Plaintiffs may file and serve their second amended complaint no later than June 24, 2002."[4] June 12 Order at 13. While the Court directed

4. It is not uncommon for a court to allow a plaintiff leave to amend after granting a Rule 12 motion to dismiss. Except in cases in which the court believes amending a pleading would be futile, courts typically grant leave to amend and specify the time in which the revised pleading is due. No further order is required, and the plaintiff must simply serve and file the amended complaint within the time frame given by the court. *See* Schwarzer at §§ 8:401–8:402.

Plaintiffs to address the deficiencies in the First Amended Complaint, no limitations were placed on the types of amendments that could be made. Defendants' characterization of Plaintiffs' tactics as "gamesmanship," Defendants' Reply at 1, is not sufficient to show unfair prejudice or bad faith. Moreover, when the Court issued its June 12 Order, it was not convinced that further amendments to Plaintiffs' complaint would be futile. *See* Schwarzer at § 8:362 (stating that "[l]eave to amend may be denied if the proposed amendment is futile or would be subject to dismissal"), *citing Saul v. United States*, 928 F.2d 829, 843 (9th Cir.1991). Indeed, with respect to the constitutional claims that were dismissed without prejudice, the Court expressly stated that it was not clear that Plaintiffs could not rectify the flaws in their complaint if given leave to amend. June 12 Order at 7–8.

Allowing Plaintiffs to name two new defendants and assert a new state law cause of action is also consistent with the Federal Rules of Civil Procedure governing joinder of parties and claims. Defendants Carillo and Llamas may be added in Plaintiffs' Second Amended Complaint, as questions of law and fact common to all defendants will be litigated in this action and Plaintiffs have asserted against these new defendants claims to relief that arise out of the same transaction or occurrence. Fed. R.Civ.P. 20. Finally, the new claim for violation of the Unruh Civil Rights Act is proper under Fed.R.Civ.P. 18, which permits Plaintiffs to join as many claims as they have against Defendants.

**B. Untimely Service of Process**

■ Defendants' second procedural justification for the dismissal of the complaint against Defendants Carillo and Llamas is that Plaintiffs failed to effect service of process on the new defendants in a timely fashion, which Defendants claim violates both the Federal Rules of Civil Procedure and this Court's previous orders.[5] Defendants' Reply at 1, 4.

---

**5.** The chronology of events related to the service of process issue is as follows: The Court's June 12 Order states, "Plaintiffs may file and serve their second amended complaint no later than June 24, 2002. If no such complaint is timely filed, then dismissal shall become with prejudice." June 12 Order at 12–13. Plaintiffs filed their Second Amended Complaint on June 19, 2002. In their Motion to Dismiss, which was filed on July 8, 2002, Defendants contend that Carillo and Llamas, the two newly-named defendants, had not been served. Defendants' Motion at 5. Defendants' counsel indicates that she was served with Plaintiffs' Second Amended Complaint soon after it was filed on June 5, 2002. She accepted service of process on behalf of Jerry Brown and the City of Oakland, the parties for whom she had appeared as lead counsel of record. Plaintiffs' counsel did not contact her about adding new defendants to the case, and no stipulation to that effect was made. *See* Declaration of Rachel Wagner at 1–2.

On July 31, 2002, Plaintiffs' submitted a request to the Court to extend the time to file an opposition to Defendants' motion. The Court instructed Plaintiffs to file and serve their opposition by August 19, 2002. *See* Order Granting Extension of Time and Order to Show Cause ("August 5 Order") at 2. The Court expressly stated that "[n]o further requests for extensions of time shall be granted." *Id.* In response to Defendants' argument in their Motion to Dismiss that Carillo and Llamas were not served and thus are not properly part of this action, Plaintiffs offer the following explanation in their opposition brief, which was filed on August 6, 2002: "[The Court's June 12 Order] does not state that P. Llamas [sic] and David Carillo must be personally served. It states, file and serve. That means on the City Attorney. That was done by June 24." Plaintiffs' Response to Defendants' Answer to Plaintiffs' Opposition of Defendants' Motion to Dismiss ("Plaintiffs' Opposition") at 12–13. Plaintiffs obtained summonses for Carillo and Llamas on August 16, 2002, and the new individual defendants were served on August 28 and 29, 2002, respectively. Defendants' Reply at 1; Declaration of Rachel Wagner at 2.

The Federal Rules of Civil Procedure require that any pleading subsequent to the original complaint "be served upon each of the parties." Fed.R.Civ.P. 5(a). The time limit for service of process is established in Rule 4(m), which provides that a defendant must be served with a summons and complaint within 120 days after the filing of the complaint. Fed. R.Civ.P. 4(m). Plaintiffs appear to have satisfied the requirements of the Federal Rules, as each of the defendants, including Carillo and Llamas, were served with a summons and a copy of the Second Amended Complaint well within the requisite 120–day time frame.

Whether Plaintiffs are in compliance with this Court's orders is a more difficult question. As the chronology of events indicates, Plaintiffs' counsel has engaged in an unacceptable pattern of behavior over the course of this litigation. The Court's June 12 Order was clear: If Plaintiffs failed to file and serve their Second Amended Complaint by June 24, 2002, the remainder of their § 1983 action would be dismissed with prejudice. However, Defendant Carillo was not served until August 28, and Defendant Llamas did not receive service of process until August 29. Plaintiffs' explanation for this two-month delay is that counsel understood the order to allow for service of all defendants on the City Attorney.

Despite this delay in effecting service of process, and in light of the Court's preference to resolve cases on the merits whenever possible, the Court is inclined to allow for Carillo and Llamas to be joined as defendants. Furthermore, the Court is hesitant to punish Plaintiffs, who might otherwise have a valid claim for relief, for the mistakes of their counsel. The Court also notes that allowing the amendment permits a more complete adjudication of this matter. For these reasons, the Court concludes that Plaintiffs' counsel's failure

to comport with its orders will not result in automatic dismissal of his clients' case.

## II. Section 1983 Cause of Action

Plaintiffs' first cause of action is for violation of 42 U.S.C. § 1983. Plaintiffs allege that Defendants violated their "civil rights to be free of illegal searches and seizures as guaranteed by the Fourth Amendment and due process of law under Fifth Amendment [sic] to the Constitution of the United States." Compl. at ¶ 16. Plaintiffs elsewhere assert that Defendants infringed upon their rights under the First Amendment. *Id.* at ¶¶ 14, 18.

### A. First Amendment Claim

■ Plaintiffs' First Amended Complaint was devoid of any facts detailing the nature of Defendants' alleged First Amendment violation, and the Court accordingly dismissed the claim without prejudice. Plaintiffs attempt to rectify this pleading defect by adding one additional sentence to their Second Amendment Complaint: "The plaintiffs wrote letters to the City of Oakland and Jerry Brown objecting to the illegal actions of Marvin Budderman and the City retaliated for the letters." *Id.* at ¶ 14. This revision falls far short of what the law requires, however.

Plaintiffs' First Amendment claim fails for two reasons. First, Plaintiffs have not addressed the Court's concerns regarding their inability to satisfy the pleading requirement for § 1983 cases articulated in *Branch v. Tunnell,* 937 F.2d 1382 (9th Cir.1991). *See* June 12 Order at 7. In *Branch,* the 9th Circuit adopted a "heightened pleading standard in cases in which subjective intent is an element of a constitutional tort action." *Id.* at 1386. To meet this standard and survive a motion to dismiss, a complaint must state "noncon-

clusory allegations setting forth evidence of unlawful intent." *Id.*

Plaintiffs' single sentence referencing letters they purportedly wrote to Defendants is not nearly enough to meet this standard. The complaint provides no indication as to the substance of these letters, when the letters were sent, or the manner in which Defendants' retaliated against Plaintiffs for their protected speech. Without a basic factual background, Plaintiffs' conclusory statement is insufficient to raise an inference of unlawful intent. Indeed, the relevant sentence in the complaint is nothing more than a "bare allegation of malice." *Id.* at 1385, *quoting Harlow v. Fitzgerald,* 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Because their factual assertions are not "concrete or specific enough to enable [Defendants] to prepare a response," Plaintiffs' First Amendment claim must be dismissed. *Id.* at 1386, *quoting Whitacre v. Davey,* 890 F.2d 1168, 1171 (D.C.Cir.1989).

Plaintiffs' First Amendment claim also fails under well-established principles governing a municipality's liability under § 1983. Plaintiffs assert only that "the City" retaliated in response to the letters allegedly sent to Defendants; no mention is made of actions taken by Mayor Brown or the individual city officials in violation of Plaintiffs' First Amendment rights. However, the Supreme Court has held that a local government cannot be held liable under § 1983 on a respondeat superior theory. *Monell v. Department of Social Services of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability may only attach to a city or other local government entity if the plaintiff is able to establish that the defendant's tortious actions were taken pursuant to an official policy or custom. *Id.* at 690–691, 98 S.Ct. 2018.

Plaintiffs include no such allegations in their complaint. In their opposition papers, Plaintiffs make the following assertion in what appears to be an attempt to address the *Monell* requirement: "[T]his is the third time that [Plaintiff Grier] has been put out of housing by the City of Oakland... This would amount to a pattern and practice." Plaintiffs' Opposition at 13. Such a statement, even if included in the complaint, would be insufficient to establish a policy or custom under *Monell.* Plaintiffs have provided no facts supporting the existence of a formal governmental policy or a "longstanding practice or custom which constitutes the standard operating procedure" of the City of Oakland. *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir.1996), *citing Gillette v. Delmore,* 979 F.2d 1342, 1346–1347 (9th Cir.1992). Plaintiffs ask this Court to ignore Ninth Circuit precedent, which does not allow the imposition of § 1983 liability on a municipality for "isolated or sporadic incidents." *Id. See Meehan v. Los Angeles County,* 856 F.2d 102 (9th Cir.1988) (concluding that two incidents are not sufficient to establish a custom under *Monell* ). In sum, Plaintiffs' allegation of retaliation is not supported by facts that would permit the Court to find that Defendants' actions have "become the traditional method of carrying out policy" in the City of Oakland. *Trevino,* 99 F.3d at 918.

Plaintiffs have failed to meet the heightened pleading standard applicable to this claim and have not satisfied the requirements for the imposition of municipal liability under § 1983. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' First Amendment claim with prejudice.

## B. Fourth Amendment Claim

 Plaintiffs assert that Defendants have "violated the civil rights to be free of illegal searches and seizures as guaranteed

by the Fourth Amendment" by conduct that "amounted to an arbitrary action by the defendants into the security of plaintiffs' houses, privacy and abode [sic]." Compl. at ¶¶ 16, 18. Plaintiffs claim that Defendants Carillo and Llamas have "entered upon the abodes and residences of the plaintiffs without search warrants or arrest warrants, and threatened by words or actions to issue citations, committed assaults and batteries upon plaintiffs, threatened to place them under arrest and search their homes... if they did not leave their homes within one week." *Id.* at ¶ 10.

In dismissing Plaintiffs' Fourth Amendment claim without prejudice, the Court observed that the allegations that could potentially give rise to a Fourth Amendment violation did not involve the conduct of either Mayor Brown or the City of Oakland. June 12 Order at 7. Plaintiffs attempt to address the Court's concern by asserting that Defendants Brown and the City of Oakland have "conspired" with Defendants Carillo and Llamas to deprive Plaintiffs of their Fourth Amendment

rights during a two-month period in 2001.[6] Compl. at ¶ 11. Plaintiffs' conspiracy claims clearly involve an element of subjective intent, and thus Plaintiffs' must meet the heightened pleading standard articulated in *Branch v. Tunnell,* 937 F.2d at 1386.[7]

Plaintiffs have failed to meet this heightened burden. While the complaint states on no less than three occasions that Defendants "conspired" to deprive Plaintiffs of their constitutional rights, *see* Compl. at ¶¶ 9, 11, Plaintiffs' allegations are entirely conclusory in nature. No facts are provided to lend any support to Plaintiffs' theory that Defendants Brown and the City of Oakland entered into a conspiracy with Defendants Carillo and Llamas to drive Plaintiffs from their homes. Because the complaint does not "allege specific facts to support the existence of a conspiracy among the defendants," *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.1992), Plaintiffs' Fourth Amendment claim against Mayor Brown and the City of Oakland must be dismissed.[8]

6. Defendants argue that the "intra-corporate conspiracy" doctrine precludes the City of Oakland from conspiring with city officials. The doctrine, which is often raised in the context of § 1985 actions, provides that "a corporation or enterprise cannot conspire with its agents acting within the scope of their employment." *Washington v. Duty Free Shoppers,* 696 F.Supp. 1323, 1325 (N.D.Cal. 1988). The Ninth Circuit has expressly declined to define the scope and applicability of the doctrine. *See Portman v. County of Santa Clara,* 995 F.2d 898, 910 (9th Cir.1993). Courts within the Northern District have reached contrary conclusions. *Compare Rabkin v. Dean,* 856 F.Supp. 543, 551 (N.D.Cal. 1994) (holding that the plaintiff's § 1985 claim against the city council was barred by the intra-corporate conspiracy doctrine) *and Washington v. Duty Free Shoppers,* 696 F.Supp. at 1326 (concluding that the intra-corporate conspiracy doctrine does not apply to § 1985 claims). Because there are independent bases for dismissing Plaintiffs' Fourth Amendment claim, the Court will not address

the applicability of the intra-corporate conspiracy doctrine at this time.

7. In *Harris v. Roderick,* 126 F.3d 1189, 1195 (9th Cir.1997), the Ninth Circuit held that the pleading requirements adopted in *Branch* applied to a *Bivens* action in which the defendants allegedly conspired to deprive the plaintiff of his Fourth Amendment rights. The Ninth Circuit has similarly addressed the pleading standard under § 1985, holding that "[a] claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim–Panahi v. Los Angeles Police Department,* 839 F.2d 621, 626 (9th Cir.1988).

8. Plaintiffs do not allege that Defendants Brown or the City of Oakland took any direct action to infringe upon Plaintiffs' Fourth Amendment liberties. With all claims of a conspiracy dismissed, Plaintiffs must provide facts to support the existence of a municipal policy or custom under *Monell* in order to

Plaintiffs state that Defendants Carillo and Llamas entered Plaintiffs' residences absent a warrant and made various threats and took intimidating actions therein. Compl. at ¶ 11. Plaintiffs fail to recognize, however, that when these alleged constitutional violations are analyzed in the administrative context in which they occurred, it is clear that Defendants did not conduct "unreasonable searches" as that term is defined in Fourth Amendment jurisprudence.[9] As the Ninth Circuit has explained, "[t]he essence of [the administrative search cases] is that searches conducted as part of a general regulatory scheme in furtherance of an administrative purpose, rather than as part of a criminal investigation to secure evidence of a crime, may be permissible under the Fourth Amendment though not supported by a showing of probable cause." *Davis*, 482 F.2d at 908.

For this reason, courts have abandoned the warrant requirement in favor of a more general reasonableness test in determining the constitutionality of administrative searches. *See Wyman*, 400 U.S. at 324, 91 S.Ct. 381 (concluding that "the warrant argument is out of place" in the context of administrative searches) *and Davis*, 482 F.2d at 910, *citing Camara*, 387 U.S. at 536–537, 87 S.Ct. 1727 (declaring that an administrative search must satisfy "the Fourth Amendment's standard of reasonableness"). A number of factors are taken into account in balancing the need for a search and the level of its intrusive-

ness. *Wyman*, 400 U.S. at 318–324, 91 S.Ct. 381 (articulating the factors taken into account in determining the reasonableness of an administrative search). Courts have "repeatedly emphasized the importance of keeping criminal investigatory motives from coloring administrative searches." *Alexander v. City of San Francisco*, 29 F.3d 1355, 1361 (9th Cir. 1994), *quoting United States v. $124,570 U.S. Currency*, 873 F.2d 1240, 1244 (9th Cir.1989). In *Wyman*, for example, the Supreme Court upheld the constitutionality of a welfare officer's home visit in part because it was "not a criminal investigation, [did] not equate with a criminal investigation, and . . . [was] not in the aid of any criminal proceeding." *Wyman*, 400 U.S. at 324, 91 S.Ct. 381.

The "searches" alleged in this case satisfy the Fourth Amendment standard of reasonableness applied by courts in the administrative context. Defendants Carillo and Llamas, a City Code Inspector and Deputy City Attorney, respectively, approached Plaintiffs' residences and had discussions with the occupants as part of an ongoing nuisance abatement action against the owner of the property. Their actions were taken in pursuit of the public interest, and the nuisance process is a matter of public concern. The means Defendants' employed in carrying out their work—entering onto the property to post notices, explaining to residents their duty to leave the property, and informing them of the consequences of their failure to do

survive the motion to dismiss. Plaintiffs make no such allegations in their complaint.

9. Courts have upheld warrantless administrative searches in a variety of contexts. *See, e.g., Wyman v. James*, 400 U.S. 309, 326, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971) (upholding New York's conditioning of receipt of welfare benefits on recipient's consent to home visits by caseworkers as part of the administration of state welfare statutes); *Camara v. Munici-*

*pal Court*, 387 U.S. 523, 537–538, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); (holding that a warrantless entry into the plaintiff's apartment pursuant to a routine inspection by city housing officials to determine compliance with the San Francisco housing code did not violate the Fourth Amendment); *United States v. Davis*, 482 F.2d 893, 912 (9th Cir.1973) (permitting airport screening and searches of airline passengers' persons and their possessions).

so—are reasonable, and the level of intrusiveness is minimal. Finally, Defendants Carillo and Llamas are not police officers or other uniformed authority figures, and they did not contact Plaintiffs as part of a criminal investigation or in an attempt to obtain evidence of criminal wrongdoing. *See id.* at 318–324, 91 S.Ct. 381. Therefore, the conduct about which Plaintiffs complain falls into that category of inspections that "are neither personal in nature nor aimed at the discovery of evidence of crime, [and hence] involve a relatively limited invasion of the urban citizens's privacy." *Camara,* 387 U.S. at 537, 87 S.Ct. 1727.[10]

Plaintiffs also do not allege facts indicating that Defendants seized their persons or their property. A person is "seized" within the meaning of the Fourth Amendment only if subjected to "a restraint of liberty such that the person reasonably believes he is not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 545, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Plaintiffs do not assert any facts indicating that Defendants physically restrained them in any way.[11] Instead, Plaintiffs accuse Defendants Carillo and Llamas of making "threats" and using "intimidation" against them. *See* Compl. at ¶¶ 9–11. Federal courts have consistently held, however, that "verbal harassment or

abuse... is not sufficient to state a constitutional deprivation under § 1983." *See, e.g., Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir.1987). *See also McFadden v. Lucas,* 713 F.2d 143, 146–147 (5th Cir. 1983) (concluding that an inmate's reliance on "mere threatening language and gestures" of prison guards fell so short of stating a § 1983 cause of action as to warrant *sua sponte* dismissal by the district court).

Finally, Plaintiffs allege no facts indicating that a seizure of their property occurred. "A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. McIver,* 186 F.3d 1119, 1127 (9th Cir.1999), *quoting United States v. Karo,* 468 U.S. 705, 712–713, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (holding that the warrantless placement of electronic tracking devices on the defendant's vehicle did not constitute a seizure of his property). The complaint contains no facts from which the Court may infer that any of Plaintiffs' property was interfered with in a meaningful way. While Defendants' presence at Plaintiffs' residences might conceivably constitute a trespass, Plaintiffs have not alleged any facts indicating that Defendants deprived

---

**10.** As this discussion makes clear, Plaintiffs' reliance on *Buenrostro v. Collazo,* 777 F.Supp. 128 (D.P.R.1991), to support their Fourth Amendment claim is woefully misguided. *Buenrostro* involves the warrantless entry into the home of a man suspected of committing narcotics offenses, a factual scenario inapposite to that presented by the administrative enforcement activities in this case.

**11.** In their Second Amended Complaint, Plaintiffs allege for the first time that Defendants "committed assaults and batteries on [them]." Compl. at ¶ 10. Defendants take great exception to this accusation, even going so far as to imply that the inclusion of the "assault and battery" language might warrant

Rule 11 sanctions. Defendants are correct that the papers filed by Plaintiffs contain no facts even suggesting that an assault and battery ever occurred. Instead, the complaint contains only a single legal conclusion, unsupported by any facts. Furthermore, Plaintiffs' Fourth Amendment claim is one of unlawful searches and seizures, not the use of excessive force. The Court has little doubt that had any of the Defendants physically assaulted any of the Plaintiffs, counsel for Plaintiffs would have made this very clear in his written and oral presentations. In fact, in their opposition brief, Plaintiffs claim only that Defendants *threatened* them with violence. Plaintiffs' Opposition at 9.

them of dominion or control over their property in any significant manner. *Id.*

For the forgoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Fourth Amendment claim. Because the Court is persuaded that Plaintiffs would be unable to state a claim upon which relief could be granted if given leave to amend, dismissal is with prejudice.

## C. Fifth Amendment Claim [12]

■ Plaintiffs claim that Defendants violated their Fifth Amendment rights to liberty and property without due process of law. In their complaint, Plaintiffs allege a conspiracy among Defendants to "deprive the plaintiffs of their homes... by threat, intimidation and fear of physical force and violence." Compl. at ¶ 9. They state that Defendants took actions in November and December of 2001 that were "intended to deprive plaintiffs of their property without due process of law in violation of the Fifth Amendment." *Id.* at ¶ 12.

Plaintiffs' allegations of a violation of their property rights without due process of law are perhaps the most scant in the complaint, and the Court has had considerable difficulty ascertaining precisely what actions Plaintiffs claim Defendants took to infringe upon their Fifth Amendment rights. What is clear, however, is that with the exception of the statements regarding a conspiracy among all Defendants to deprive Plaintiffs of their Fourth and Fifth Amendment rights, Plaintiffs do not allege any conduct by Defendant Brown or Defendant City of Oakland that

could constitute a due process violation. Therefore, as with their Fourth Amendment claim, Plaintiffs' Fifth Amendment claim against Defendants Brown and the City of Oakland is dismissed for failure to satisfy the heightened pleading standard for conspiracy claims adopted in *Harris v. Roderick* and, alternatively, for failure to state any facts to establish a policy or custom under *Monell v. Department of Social Services of New York*. With respect to Defendants Carillo and Llamas, Plaintiffs have neglected to make any substantive amendments to their complaint that would allow the Court to find that they have stated a claim upon which relief may be granted. Plaintiffs' entire Fifth Amendment claim must accordingly be dismissed.

The burden is on Plaintiffs to allege the two elements of a procedural due process violation: 1) Plaintiffs possessed a protected liberty or property interest and 2) Plaintiffs were deprived of that interest without due process of law. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). As the Court noted in its previous order, it is unclear whether Plaintiffs had a protected property right in their respective residences during the time period in question. *See* June 12 Order at 8, *citing Salazar v. Maradeaga*, 12 Cal.Rptr.2d 676, 10 Cal. App.4th Supp. 1, 4 (1992) (holding that a tenant can maintain a right of possession despite the fact that the underlying lease is unenforceable).[13] However, Plaintiffs have cited to no authority supporting their

---

**12.** Plaintiffs consistently characterize their procedural due process claim as arising under the Fifth Amendment. While the Court notes that this claim is more accurately described as arising under the 14th Amendment, the Court will refer to the procedural due process allegations as a Fifth Amendment claim to remain consistent with the parties' pleadings and briefs.

**13.** The court in *Salazar* concluded that the tenant had a right to possession until he received relocation benefits from the landlord. *Id.* at 10, 12 Cal.Rptr.2d 676. Plaintiffs acknowledge that they received relocation expenses from Budderman in this case. *See* Plaintiffs' Opposition at 8.

assertion that they had a protected property right in this case.

Plaintiffs allege that Defendants "engaged in a series of actions"—threats, intimidation, and harassment—in November and December of 2001 that were designed to deprive them of their property without due process. Compl. at ¶ 12–13. Plaintiffs provide no authority in their opposition papers demonstrating that Defendants' conduct constitutes a deprivation of a protected property interest.

Lastly, it is unclear what "process" Plaintiffs claim they were denied by Defendants' actions. Plaintiffs' argument seems to be that they were entitled to have their rights adjudicated in unlawful detainer proceedings before surrendering their tenancy. Plaintiffs' Opposition at 6. Defendants contend that Plaintiffs received adequate notice and a meaningful opportunity to be heard under *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Defendants correctly point out that Budderman did eventually institute unlawful detainer actions against Plaintiffs, and they argue that several circuits have held that such state eviction proceedings provide tenants with adequate procedural due process protections. Defendants' Motion at 16–17. *See, e.g., Colvin v. Housing Authority of Sarasota*, 71 F.3d 864, 866 (11th Cir.1996). Plaintiffs' participation in their civil action against Budderman, their role as amici in the city's nuisance abatement proceeding against the landlord, and their receipt of relocation benefits further indicate that they received all process to which they were entitled. This Court cannot see how the Due Process Clause requires anything more.

At the hearing on Defendants' motion, the Court offered Plaintiffs one last opportunity to assert a claim for a violation of procedural due process that would satisfy the permissive standard of Rule 12(b)(6). The following exchange is revealing:

**The Court:** But let me ask you this, Mr. Murcko, what changes would you make in pleading your Fifth Amendment claim, only the Fifth Amendment claim? If I were to give you leave to amend that claim one final time, what would your allegations be for the Fifth Amendment claim?

**Mr. Murcko:** The Fifth Amendment claim for denial of due process, you mean, Your Honor?

**The Court:** Yes.

**Mr. Murcko:** This is it, Your Honor. They were trying to deprive them of the right—

**The Court:** Talk like a lawyer now. Amend your complaint to state what?

**Mr. Murcko:** I would amend my complaint, Your Honor, to state that these officials went to the homes of these [Plaintiffs] with the intent to deprive them of their right to a jury trial by making threats against them, by telling them that they had to leave, by telling them they had to arrest them, and by pushing some of these people around. That would be the essence of my due process claim, Your Honor. [ ]

**The Court:** I've got the amendment there. You've articulated it, and that's what I would read.

**Mr. Murcko:** That would be the essence, Your Honor, and, also, that they applied to the City for relief. They applied to the City for relief, and the City, instead of giving them relief, Your Honor, they send these individuals out to try to use force and violence to deprive them of their right of a jury trial that's guaranteed by the California Constitution and the California statutes, Your Honor [ ].

Transcript at 17:19—18–25.

When given a final chance to resurrect their procedural due process claim, Plain-

tiffs chose instead to dwell on an issue that this Court dismissed with prejudice nearly five months ago. In light of Plaintiffs' written and oral arguments, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Fifth Amendment claim with prejudice.

### III. Unruh Civil Rights Act Cause of Action

■ Plaintiffs' second cause of action is for a violation of the Unruh Civil Rights Act, Cal. Civ.Code § 51.[14] Plaintiffs' allegations consist solely of the statement that Defendants, all of whom "worked for the City of Oakland," took actions that were "intended to deprive plaintiffs of the public accommodations of the apartment complex at [10031–59 MacArthur Boulevard] guaranteed by the California Civil Code, Section 51 pertaining to their race, sex, color and national origin."[15] Compl. at ¶ 21. Plaintiffs' argument that Defendants "discriminated against [them] by attempting to use force, intimidation, and violence against women to force them out of the housing" provides little in the way of elaboration. Plaintiffs' Opposition at 12.

Plaintiffs' claims are insufficient to withstand the motion to dismiss. The California Supreme Court has concluded that "a plaintiff seeking to establish a cause of action under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act." *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1175, 278 Cal.Rptr. 614, 805 P.2d 873 (1991). *See also Nicole M. v. Martinez*

*Unified School District*, 964 F.Supp. 1369, 1388–1389 (N.D.Cal.1997). Where subjective intent is an element of a § 1983 cause of action, the Ninth Circuit requires that plaintiffs "state in their complaint nonconclusory allegations setting forth evidence of unlawful intent." *Branch*, 937 F.2d at 1386. This Court dismissed Plaintiffs' equal protection claim with prejudice for failure to plead facts demonstrating that Defendants acted with discriminatory intent. *See* June 12 Order at 10. The revision of a single statement in the complaint falls far short of curing this defect. Furthermore, Plaintiffs have previously admitted that they have no factual basis to proceed under an equal protection theory. *Id.*

Given the parallels between the showings required under the Equal Protection Clause and the Unruh Act, *see Sargoy v. Resolution Trust Corp.*, 8 Cal.App.4th 1039, 1048, 10 Cal.Rptr.2d 889 (1992) (noting that, given the similarities between the two provisions, it is "inconceivable" that a practice found to be constitutional under the Equal Protection Clause would violate the Unruh Act), the Court is confident that allowing Plaintiffs to amend would be futile. Thus, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Unruh Act claim with prejudice.

### CONCLUSION

Because Plaintiffs have failed to take advantage of the ample opportunities this Court has afforded them to adequately state a claim upon which relief may be

---

14. Section (b) of the Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ.Code § 51(b).

15. Plaintiffs originally maintained that Defendants' purported First, Fourth, and Fifth Amendment violations were motivated by "racial animus," and that Defendant Brown and Marvin Budderman exhibited a "hatred of African Americans." First Amended Complaint at ¶ 10. Inexplicably, Plaintiffs have omitted this allegation from their Second Amended Complaint.

granted, the Court has no choice but to dismiss this action with prejudice. In summary, the Court rules as follows:

1. Defendants' Motion to Dismiss as to Plaintiffs' first cause of action for violation of 42 U.S.C. § 1983 is GRANTED, in its entirety, with prejudice.

2. Defendants' Motion to Dismiss as to Plaintiffs' second cause of action for violation of the Unruh Civil Rights Act is GRANTED with prejudice.

The clerk is directed to close this case.

**IT IS SO ORDERED.**