Filed 11/17/23  Vidal v. Pick Axe Holding CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| RICARDO VIDAL,<br><br>   Plaintiff, Cross-defendant and Respondent,<br><br>   v.<br><br>PICK AXE HOLDING, LLC,<br><br>   Defendant and Appellant; and<br><br>CHRISTOPHER WILLIAMS,<br><br>   Defendant, Cross-complainant and Appellant. | D081047<br><br><br>(Super. Ct. No. 37-2018-00044217-CU-BC-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Ronald F. Frazier, Judge.  Affirmed.

Tiffany & Bosco, Brandon J. Mika, and Evan P. Schube for Defendants, Cross-complainant, and Appellants.

Mauriello Law Firm and Thomas D. Mauriello for Plaintiff, Cross-defendant, and Respondent.

This case involves a dispute over contract interpretation. Ricardo Vidal and Pick Axe Holding, LLC (Pick Axe), through Christopher Williams, executed the "Vista Medical Marijuana Dispensary Proposal" (Agreement). When the relationship broke down, Vidal filed a breach-of-contract action against Pick Axe and Williams, and Williams filed a cross-complaint against Vidal alleging breach of the Agreement and related claims. At the conclusion of a two-day bench trial, the trial court issued a tentative decision finding the Agreement void due to an impossible condition precedent that rendered the object of the Agreement unlawful. On appeal, Pick Axe contends the trial court erred in interpreting the contract and requests we vacate the judgment. Based on the limited record on appeal, which lacks both a statement of decision and a reporter's transcript, we conclude the trial court did not err and affirm.

## I.

The absence of a statement of decision and reporter's transcript necessarily constrains our recitation of the relevant facts.

## A.

Vidal owned a two-story commercial building in Vista, California (Property), that is zoned for Office Professional use.

Pick Axe, an entity owned and operated by entrepreneur Williams, was in the business of applying for permits to operate marijuana dispensaries.

After meeting at a cannabis industry event in early 2017, Vidal and Williams discussed Vidal selling Pick Axe the rights to apply for a medical marijuana dispensary permit on the Property. When Vidal disclosed the Property's zoning in June 2017, Williams observed that the Property's zone under a proposed ordinance was "no good" because they needed Commercial or Mixed Use zoning to obtain a medical marijuana dispensary permit. Vidal

2

told Williams that, according to the City of Vista's (City) city planner, they could apply to rezone the Property. Vidal said that "[i]t costs $18,000 and takes approx[imately] 6 months," and "the city planner said that he can ask the panel director for a tentative answer in terms of viability before we submit the actual application and pay the fees." Williams replied that he was "definitely interested" to hear from the city planner, but the record is devoid of further evidence concerning the issue of rezoning.

The Vista City Council (Council) voted to continue prohibiting marijuana dispensary operations within the City on September 26, 2017. Nonetheless, on November 28, 2017, Vidal and Williams executed the Agreement, a six-page PowerPoint deck with four pages of bullet-pointed terms.

Under the Agreement, Pick Axe agreed to and did pay Vidal a "$5,000 non-refundable earnest money deposit" to secure the right to apply for a conditional use permit (CUP) for a medical or recreational marijuana dispensary at the Property. The Agreement stated: "The lease will be a five[-]year exclusive option to only apply for a [medical marijuana] or recreational [CUP]." Pick Axe also agreed to (1) put forth its "best effort" to identify a sublessee for the second-floor space, (2) pay an additional $5,000 within 30 days of the City approving a marijuana dispensary initiative, (3) cover all associated fees and expenses for a CUP application, (4) pay for tenant improvements for the CUP and any associated taxes, (5) "[a]t the issuance of [the CUP]," make lease payments during the improvement period, (6) make lease payments "from the time the dispensary doors open and are legally allowed to retail," (7) provide Vidal a "first right of refusal" to manufacture and supply products for distribution at the dispensary, and (8) assist Vidal with promoting his manufacturing business. Vidal,

3

meanwhile, in addition to leasing the Property, (1) took responsibility for any previous fines and (2) agreed to a buyout option of $3 million to apply for or take over the CUP. At its conclusion, the Agreement states: "This is an agreement to work on the actual lease terms to the best of our abilities."

B.

On May 1, 2018, the Council voted to allow a ballot measure permitting the operation of marijuana dispensaries in the City. That same evening, Vidal purported to rescind the Agreement, contending that Pick Axe had materially breached the Agreement by failing to use its best efforts to help sublease the Property's vacant second floor.

On August 31, 2018, Vidal sued Pick Axe and Williams for breach of the Agreement and intentional misrepresentation.

On November 8, 2018, voters in Vista passed Measure Z, which allowed the establishment of eleven marijuana dispensaries within City limits, and on December 11, 2018, Chapter 5.94, "Medical Cannabis Dispensaries" (Ordinance), was added to the Vista Municipal Code. Under both Measure Z and the Ordinance, only properties within certain zones could be permitted to operate a dispensary. They excluded Office Professional as an allowable zone, which meant that dispensaries still could not operate in the Property's zone.

On March 11, 2019, Williams filed a verified cross-complaint against Vidal, asserting claims for breach of the Agreement, breach of the implied covenant of good faith and fair dealing, abuse of process, fraud, declaratory relief, and specific performance of the Agreement.

The parties waived their right to a jury trial, and in late October 2021, the trial court held a two-day bench trial. During trial, the court admitted numerous exhibits, including text messages exchanged by the parties, e-

4

mails, and information about Measure Z and zoning. It also heard testimony from both Vidal and Williams, as well as several other witnesses.

At the conclusion of trial, the court issued a tentative decision. "[A]fter review of all the evidence including listening to and considering the witnesses' testimony and review and consideration of all the exhibits[,]" the court found the Agreement void due to a "condition of impossibility" under Civil Code section 1141. Namely, "in order for both parties to perform under the contract," the Property had to be zoned to allow a marijuana-related permit. Because the Property was zoned Office Professional, a permit could not issue, and thus "the business contemplated by the contract (i.e., Cannabis) could not operate legally." "The requirement of the building being properly zoned for the business in question was a condition precedent which precludes the performance of the contract." As a result, the trial court found that "an impossibility of performance has occurred" that rendered the Agreement "void."

The tentative decision issued judgment for Pick Axe and Williams on Vidal's complaint, issued judgment for Vidal on Williams' cross-complaint, and ordered Vidal to return Williams' earnest-money payment. The court additionally found that "Williams made a very credible witness" while "Vidal did not make a credible witness."

No party filed timely objections, so the tentative decision became final. The trial court denied Williams and Pick Axe's untimely request for a statement of decision and on March 4, 2022, issued a judgment in accordance with its tentative decision.

## II.

On appeal, Pick Axe contends the trial court erred in finding the entire Agreement void based on the Property's ineligibility to obtain a CUP. Given

5

the constraints on our review due to the incomplete record on appeal, we disagree.

A.

It is incumbent on the appellant to show error by way of an adequate record. (*Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532.) A trial court's judgment is presumed correct, "and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

Where, as here, there is no reporter's transcript or other record of the oral proceedings below, "[t]he sufficiency of the evidence is not open to review. The trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding on the appellate court, unless reversible error appears on the record." (*Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924 (*Bond*).) We must presume "that the unreported trial testimony would demonstrate the absence of error." (*In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

In addition, two consequences flow from an appellate record that, as here, lacks a statement of decision. (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970.) First, "any objection to the trial court's failure to make all findings necessary to support its decision" is waived. (*Ibid.*) "Second, the appellate court applies the doctrine of implied findings and presumes the trial court made all necessary findings supported by substantial evidence." (*Ibid.*)

As a general matter, a trial court's construction of a contract presents a question of law we review de novo. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.) When a contract is ambiguous and its interpretation requires assessing the credibility of properly admitted but

6

conflicting extrinsic evidence, however, interpreting the contract is a question of fact. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395.) In such cases, we review the trial court's interpretation under the substantial evidence standard. (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1110 (*Tribeca*).)

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." (*Pacific Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co.* (1968) 69 Cal.2d 33, 37.)

B.

Here, as there is no reporter's transcript, we presume there was substantial evidence to support the judgment, and as there is no statement of decision, we presume the trial court made all factual findings necessary to support that judgment. Accordingly, for Pick Axe to succeed on appeal, it must show there was no set of facts under which the trial court could have interpreted the contract as it did. Pick Axe does not do so.

The trial court did not reversibly err in admitting extrinsic evidence to assist in interpreting the Agreement and determining the parties' intent. The Agreement, which is not a model of clarity, contains four PowerPoint slides of bullet-pointed terms and specifies that it "is an agreement to work on the actual lease terms[.]" It was thus eminently reasonable for the trial

7

court to consider and admit extrinsic evidence to assist it in filling in the gaps inevitable in such a bare-bones contract.

Furthermore, we presume, from the trial court's determination of the relative credibility of the trial testimony of Vidal and Williams, that the trial court considered and resolved conflicting extrinsic evidence in determining the parties' intent and reaching its contractual interpretation. Accordingly, the trial court's interpretation of the Agreement is subject to review under the substantial evidence standard. (*Tribeca, supra*, 239 Cal.App.4th at p. 1110.)

Because, in the absence of a reporter's transcript or other record of the oral proceedings, we presume the trial court's findings of fact and conclusions of law are supported by substantial evidence, we are bound by the trial court's interpretation "unless reversible error appears on the record." (*Bond, supra*, 50 Cal.App.4th at p. 924.) We discern no such error here.

"The object of a contract must be lawful when the contract is made, and possible . . . by the time the contract is to be performed." (Civ. Code, § 1596.) And "a condition precedent is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises." (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 313.) "A condition in a contract, the fulfillment of which is impossible or unlawful . . . , is void." (Civ. Code, § 1441.) Impossibility excusing nonperformance under a contract must be objective rather than due "to the inability of the obligor to do it." (*Hensler v. City of Los Angeles* (1954) 124 Cal.App.2d 71, 83.) As pertinent here, unlawful means "[c]ontrary to an express provision of law." (Civ. Code, § 1667.)

The trial court did not reversibly err in finding that the object of the Agreement was to operate a recreational or medical marijuana dispensary on

the Property, as supported by the title of the Agreement: "Vista Medical Marijuana Dispensary Proposal." And the appellate record is clear that the Property's zoning made it ineligible to house a marijuana dispensary business, whether under proposed and ultimately rejected initiatives, Measure Z, or the Ordinance. To apply for, and eventually obtain, a permit, Pick Axe was required to submit "[d]ocumentation that the business is located in an allowed zone." It could not do so, and accordingly, as the trial court found, the parties could not lawfully operate a dispensary on the Property as intended. Prior cases have recognized that no relief can be granted to either party under a lease that has as its object conducting a business that would be unlawful on the leased premises, including due to "violations of city ordinances." (*Dunn v. Stegemann* (1909) 10 Cal.App. 38; see also *Salazar v. Maradeaga* (1992) 10 Cal.App.4th Supp. 1, 4.) It is not apparent on the face of the appellate record that the trial court reversibly erred in applying similar principles here.

In light of this disposition, we need not and do not reach Vidal's arguments that (1) the trial court's interpretation of the Contract is supported by policy considerations and (2) performance is impossible due to the expiration of Pick Axe's five-year option. Furthermore, because we did not rely on the materials Vidal requests we judicially notice in reaching our decision, we deny as moot his request for judicial notice.

9

### III.

We affirm.  Each party shall bear its own costs on appeal.


                                                          CASTILLO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


KELETY, J.